| | |
|---|---|
| From: | Christopher Prater |
| To: | Eric Gabrielle |
| Cc: | Lynn Derenthal; Deaken Shuler; Beatriz Reyes; Jonathan Pollard |
| Subject: | Navarro v. Autonation, Inc., et al. - Plaintiff's Expert Disclosure |
| Date: | Monday, April 1, 2024 4:59:24 PM |
| Attachments: | image001.png |
| | 2024.4.1 - M. Elkins, Esq. - Expert Report.pdf |

Good afternoon,

Attached please find Plaintiff's expert's Report. In addition to this opinions, the Report contains a description of the facts and exhibits reviewed/relied upon, a statement regarding compensation, and a copy of the expert's CV (which includes a list of publications that are also available on his website (link in the report)). Mr. Elkins has not testified as an expert at trials or in depositions in the previous 4 years.

A copy of the items listed in the Materials Reviewed section of the Report are available at the following link: https://www.dropbox.com/scl/fo/qy3v8pzl7shyo09ybyl6w/h?rlkey=43zx6k9iqakt0ope7hhvf01gm&dl=0

Thanks,

Chris
Christopher S. Prater, Esq.



POLLARD PLLC

401 E. Las Olas Blvd., #1400
Fort Lauderdale, FL 33301
Office: 954-332-2380
Direct: 954-332-4157
cprater@pollardllc.com
www.pollardllc.com

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer.



DEFENDANT'S EXHIBIT 24
2024-04-29



April 1, 2024

**VIA EMAIL ONLY**

Jonathan Pollard, Esq.
jpollard@pollardllc.com
Christopher Prater, Esq.
cprater@pollardpllc.com
Pollard, PLLC
1101 Simonton Street
Key West, FL 33040

      RE:    Expert Report
                *Juan Navarro v. Hollywood Imports Limited, Inc., et. al*
                United States District Court Southern District of Florida
                Case No.: 0:23-cv-61772-RS

Jonathan and Christopher,

      The following is my Expert Report ("Report") in the above-referenced matter.

## MATERIALS REVIEWED

In preparing this Report I reviewed the following materials:

- Complaint and Demand for Jury Trial [DE 1]

- Amended Answer, Defenses, and Affirmative Defenses By Defendant Hollywood Imports Limited, Inc. [DE 21]

- Amended Answer, Defenses, and Affirmative Defenses By Defendant AutoNation, Inc. [DE 22]

- Plaintiff Juan Navarro's Responses to Defendant Hollywood Imports, Inc.'s First Interrogatories Sworn to on February 12, 2024

- Plaintiff Juan Navarro's Responses to Defendants' First Request for Admissions

- Declaration of Emanuel Fuentes-Baez, dated March 6, 2024



- Deposition Transcripts of the following individuals:

  - Plaintiff
  - Carl Vanderwarker
  - David Losk
  - Bibi Bickram

## BACKGROUND OF EXPERT

A copy of my *curriculum vitae* is attached as Exhibit A.

I have been licensed to practice law in the State of Florida since October 2001. I am licensed in all state and federal courts in the State of Florida, as well as the United States Court of Appeals for the Eleventh Circuit. During the duration of my legal career, I have been admitted to other United States District Courts *pro hac vice*.

Throughout my legal career, I have served innumerable times as lead counsel representing municipalities and private businesses in civil rights labor and employment (ADA, Title VII, FCRA, FMLA, FLSA etc …) litigation, the vast majority of which has been litigated in federal court. I have also served, on occasion, as lead counsel representing plaintiffs in civil rights labor and employment matters against private businesses.

I have been practicing with the law firm of MLE Law since January 2019, where I am the founder and responsible for the firm's entire practice.

From January 2012 until December 2019, I was an equity partner with Bryant, Miller, Olive P.A. ("BMO"). During my tenure at BMO, not only was I an owner, but I was the co-chair of the firm's litigation practice group. In my role as co-chair, I oversaw all aspects of the firm's litigation.

From August 2007 until December 2011, I was a partner with Fowler, White, Burnett P.A. where I assisted in running the firm's labor and employment department.

From January 2003 until July 2007, I was a partner with Corcoran & Elkins.

From October 2001 until December 2002, I was an associate with Muller Mintz, P.A., which is now known as Akerman.

During the entirety of my almost twenty-three (23) year legal career I have primarily practiced labor and employment law defending management. The majority of my practice was and is defending employers in employment law disputes and representing municipalities in traditional labor disputes.

Additionally, I am routinely hired to conduct workplace investigations, both as a client representative and as an independent investigator. To that end, I have investigated issues relating to hostile work environment, sexual harassment, gender discrimination, race discrimination,



national origin discrimination and disability discrimination. I have conducted workplace investigations for both public and private sector employers.

I have been quoted numerous times as a legal expert on labor and employment matters by national publications such as CNN, Yahoo, USA Today, MSNBC, Yahoo Finance, Forbes, Yahoo Sports, Bloomberg, The New York Daily News, The Miami Herald, Newsweek, SHRM, and Law 360 to name a few.

I have received numerous awards including being recognized by Fort Lauderdale Illustrated as a top labor and employment attorney for 2020 and 2021 and being recognized by the Daily Business Review as South Florida's "Most Effective Employment Lawyer" in 2019.

Further information on my practice, my firm, my publications, my media appearances and more can be found on my website https://mlelawfirm.com.

I am being compensated for my services at a rate of $500/hr.

## SCOPE OF OPINION

I am hired to opine on the sufficiency of an investigation by AutoNation, Inc. ("AN") into Plaintiff's May 14, 2023, email Complaint to Cary Pacheco. Additionally, I am hired to opine on whether the failure of management employees to report certain conduct violates HR best practices/standard of care.

## BACKGROUND FACTS

### Plaintiff's Employment History

In approximately March 2022, Plaintiff was hired by Hollywood Imports Limited, Inc. ("HI") as a Sales Associate on the Internet Sales Department Team. *See* Losk Dep. TR:52:12-17.[1] HI operates as an AN car dealership, known colloquially as "AutoNation Honda Hollywood." *See id.* TR:6-7:25-9. HI is one of the dealerships under the AN umbrella. *See* Bibi Bikram ("Bickram") Dep. TR:18-19:17-1.

Plaintiff's direct supervisor was David Losk ("Losk"). *See* Navarro Dep. TR:32-33:23-1. Losk's title is Internet Sales Manager. *See* Losk Dep. TR:7-8:24-19. Losk's direct supervisor is Carl Vanderwarker ("Vanderwarker"). *See id.* TR:10:7-8. Vanderwarker's title is General Sales Manager. *See id.* TR:10:17-18; *see also* Vanderwarker Dep. TR:8:14-16.

### Human Resources

---

[1] In citing to deposition transcripts, I use the citation format "TR_:_." The "TR" refers to "transcript," the first number following the TR refers to the page number(s) of the transcript, and the number following the semi-colon refers to the line number(s) of the transcript.



HI's human resources functions are administered through an AN company called Eastern Region Management ("ERM"). See Bikram Dep. TR:19:2-15. ERM supports certain AN dealerships and in the context of human resources, operates in a consultive manner. See id. TR:19-20:25-13. Specifically, ERM "[provides] HR support in all aspects to associates, if they need help, if there are issues, concerns, if they need help with benefits, if they need help with paperwork, if a manager needs support with coaching, counseling, performance management. So it's -- it's a variety of HR functions that [it] [provides]." Id. TR:20-21:20-1. In short, ERM provides a "sort of all the things" function when it comes to HR support. Id. TR:21:2-11.

HI's human resources policies come from AN and are contained on AI's Employee Handbook. See id. TR:21-22:12-8. HI has the flexibility to modify some non-human resources policies, but generally, the human resources policies cannot be modified and must be followed. See id. TR:21-25:22-9. HI is also governed by AN's Code of Business Ethics ("Code"). HI must follow the Code and it cannot be modified. See id. TR:25-26:10-11.

If a HI manager receives a complaint of misconduct from a dealership-level employee, the manager is required to report the complaint to ERM. See id. TR:61:11-8. The duty to report also extends to misconduct conduct that a HI manager observes and/or hear. See id. TR:72-73:1-6.

ERM's human resource managers are called "Market Human Resource Managers" ("MHRMs"). MHRMs are not required to document or log complaints of employee misconduct. See id. TR:62:7-16. MHRMs are required to investigate complains of misconduct from both current and former employees. See id. TR:75-76:21-4. There is no policy requiring that MHRMs document witness interviews from investigations. See id. TR:75:4-20. Ideally, there would be documentation of an investigation, but sometimes there is not a report. See id. TR:74:3-12.

### Plaintiff's May 14, 2023, Email Complaint

On May 14, 2023, Plaintiff sent an email ("Email Complaint") to Cary Pacheco ("Pacheco"). A copy of the Email Complaint is attached as Exhibit 8 to Plaintiff's deposition and is cited to herein as "Exhibit 8." Therein, Plaintiff alleges that his manager "Joey"[2] violated his personal space by "hugging" him from his back. See Exh. 8. Plaintiff further alleges that Rodriguez grabbed him from his back and said to Plaintiff "I like you so much." See id. Plaintiff also alleges that Rodriguez' grabbed his ass and nipples, kissed him on his neck, and told him he loved him. See id. Finally, Plaintiff alleges that, among numerous other people, Losk and Vanderwarker witnessed the conduct, and that Plaintiff did not initially tell HR because he feared for his job. See id.[3]

---

[2]   Plaintiff is referring to then HI employee, Joseph "Joey" Rodriguez ("Rodriguez"). Rodriguez is still employed at an AI dealership.

[3]   Plaintiff further details Rodriguez' alleged conduct in his answer to Interrogatory No. 7, and in the Complaint. Plaintiff alleges that, among others, Losk and Vanderwarker witnessed the conduct detailed in the answer to Interrogatory No. 11 and in the Complaint.



At the time of the Email Complaint, Bikram was the Vice President of Human Resources, Eastern Region for ERM and Pacheco was the ERM Market Human Resources Manager responsible for HI. *See* Bikram Dep. TR:21:1-4 [4]; TR:58-60:7-14. Bikram was Pacheco's supervisor.

As the Email Complaint is from a former employee, ERM was required to investigate. According to Bikram, Pacheco investigated the allegations in Plaintiff's Email Complaint. *See id.* TR:81-82:20-2. Bikram does not know what Pacheco did in connection with the investigation, did not ask about the details of the investigation and does not know if there are any records of Pacheco's investigation. *See id.* TR:82:3-12. Bikram is unaware if any documents were generated in connection with the investigation. *See id.* TR:79:4-9. According to Bikram, Pacheco said that the allegations in the email could not be substantiated. *See id.* TR:81-82:21-2.

## EXPERT OPINION

Regardless of its merit,[5] Plaintiff's Email Complaint raises very serious allegations. The Email Complaint alleges, among other things, battery. Not all complaints to HR are created equal. By way of example, a complaint to HR that one employee was rude to another employee without more is dramatically different than an allegation of hostile work environment that contains an allegation of battery. While HR may not generate a report about the rude employee complaint, HR should have generated a complete and detailed report as to Plaintiff's Email Complaint.

In addition to raising very serious issues like battery, the Email Complaint also implicitly alleges that there is a systemic culture at HI that allows Rodriguez' alleged behavior. This is evident by the fact that Plaintiff alleges that Rodriguez' conduct was witnessed by the top three (3) managers at HI as well as twelve (12) other HI employees. If Plaintiff's allegations in the Email Complaint are true, there are serious issues as to why the employees who witnessed the conduct, especially management employees, did not report it. More to the point, the failure of employees who witnessed the conduct, especially management employees, to report the alleged conduct falls below HR best practices/standard of care. Management employees are aware of their duty to report any inappropriate conduct that they witness. Therefore, the failure to do so in this case, assuming that Plaintiff's allegations are true, is a human resources deficiency.

Further, Pacheco should have interviewed all of the witnesses named in the Email Complaint. She should have documented all of her witness interviews, gathered any applicable documents (emails, text messages, and the like). Pacheco then should have generated a detailed report summarizing each witness interview, attaching relevant documents, and detailing her findings. To my knowledge, Pacheco didn't even interview Plaintiff about his Email Complaint. My opinion is that Pacheco's investigation, if one was even done, was completely insufficient and far below HR best practices.

---

[4]   In February 2024, Bikram's title changed to "The Vice President, People Partners." *See* Bikram Dep. TR:30:21-24.

[5]   I am not opining on the merit of any allegations, that is for the factfinder.



      Bikram's conduct was also deficient. As Pacheco's supervisor, Bikram should have realized the deficiency of Pacheco's investigation. Bikram failed insofar as she did not follow-up with Pacheco asking for documentation of the investigation. Instead, Bikram accepted Pacheco's verbal statement that the allegations in the Email Complaint were not substantiated. Based on the Bikram's testimony, it appears that Bikram did next to nothing to ensure that there was a through and complete investigation. Given the seriousness of the allegations in the Email Complaint, Bikram's conduct was deficient in the context of HR best practices.

Sincerely,

Michael L. Elkins
melkins@mlelawfirm.com

# EXHIBIT A

# MICHAEL L. ELKINS, ESQUIRE

1213 SE Third Ave., Ft. Lauderdale, Florida 33316 ▪ (954) 401-2608 ▪ melkins@mlelawfirm.com

## PROFESSIONAL EXPERIENCE

**January 2019 – Present**

**MLE LAW, LLC**, Fort Lauderdale, FL
Founder – Labor and Employment Law, Business Litigation, Corporate Counsel. Sports Law
- Chair complex labor and employment and business litigation matters, lead trial counsel in numerous labor and employment and business litigation matters
- Conduct numerous workplace investigations on issues such as sexual harassment, hostile work environment and discrimination
- Participate in and coordinate complex collective bargaining negotiations on behalf of management for municipal employers
- Provide counseling to management on issues relating to all aspects of employment practices, including but not limited to, advising on legal issues relating to Title VII, FMLA, FLSA, ADEA and all Florida comparable state statutes
- Negotiate high-level corporate, executive employment agreements
- Provide advice to large to mid-size corporations concerning general corporate matters and corporate governance

**January 2012 – December 2019**

**BRYANT, MILLER, OLIVE, P.A.**, Miami, FL
Equity Partner – Labor and Employment Law, Defending Management Exclusively; Corporate Counsel
*Co-Chair Litigation Practice Group*
- Conduct complex labor and employment litigation, lead trial counsel in numerous corporate labor and employment matters
- Participate in and coordinate complex collective bargaining negotiations on behalf of management for corporate employers
- Provide counseling to management on issues relating to all aspects of employment practices, including but not limited to, advising on legal issues relating to Title VII, FMLA, FLSA, ADEA and all Florida comparable state statutes

**August 2007 – January 2012**

**FOWLER, WHITE, BURNETT, P.A.**, Miami, FL
Partner – Labor and Employment Law, Defending Management Exclusively; Mergers & Acquisitions
- Handled all aspects of labor and employment matters for corporate and public sector clients
- Handled all corporate legal issues for new minority ownership group in their purchase of the Philadelphia 76ers Basketball Club, including but not limited to, handling all purchase and sale agreement negotiations, all limited partnership negotiations, drafting of all general partnership and limited partnership agreements and negotiating all media rights issues
- Negotiated and provided employment contract advice on behalf of several NCAA Division I college basketball coaches and one NBA coach

**January 2003 – August 2007**

**CORCORAN & ELKINS, LLP**, Fort Lauderdale, Florida
Founder – Labor and Employment Law-Defending Management, General Corporate Litigation
- Handled all matters relating to labor and employment law and commercial litigation

**October 2001 – January 2003**

**MULLER MINTZ, P.A., k/n/a AKERMAN SENTERFITT, P.A.**, Miami, FL
Associate – Labor and Employment Law, Defending Management
- Represented management in areas of traditional labor law and employment litigation

## MEDIA APPEARANCES, PUBLICATIONS AND CONFERENCES

- CNN: Your Coronavirus workplace questions answered
- New York Daily News: Colin Kaepernick's collusion grievance a 'mistake' says legal expert
- Yahoo: A Guide to Calling In Sick
- Yahoo: Why Many Companies Won't Be Able to Follow in Twitter's Footsteps With Permanent Remote Work
- Law360: Deflategate Turns 5: How NFL Discipline Has Evolved
- Forbes: Biden's Labor Secretary Nominee Confirmed By Senate; Big Changes Ahead For Business Community
- Newsweek: Baseball is Back; But MLB Labor Dispute Points to Uncertain Future

- Forbes: Impact of COVID on Civil Rights In Workplace Will Be Focus of EEOC Hearing
- Forbes: What the EEOC's Updated Guidelines Mean for Business Leaders
- Forbes: Codes of Conduct and Ethics Can Help Guard Against and Address Crisis Situations
- Miami Healrd: In this 'Me Too' age, enforcing zero tolerance for offensive behavior may come at a cost
- Daily Business Review: Landing and Keeping Government Legal Work: How About a Sports Podcast?
- Also featured in: SHRM, Monster, Inc., Thrive Global, Tech Target
- 2017 Forbes 30 Under 30 Conference
- Attendee, MIT/Sloan Sports Analytics Conference, 2010, 2011, 2012
- Author, "ADA Changes Force Employers to Adjust Disabled Worker Policies," *Daily Business Review*, Special Report: Labor & Employment, March 26, 2009
- Author, "Cyber Spy: What You Don't Know About Employees' Computer Use Could Hurt You," *Winning Bids*, Winter 2008/2009
- Author, "Employers Should Clearly Define Employee Job Functions," *Daily Business Review*, Special Report: Labor & Employment, November 25, 2008

## EDUCATION

**1998 - 2001**  **ST. THOMAS UNIVERSITY SCHOOL OF LAW**, Miami, Florida
*Juris Doctor*, May 2001 – ***Cum Laude, Class Rank Top 10%***

> Honors:  Member, ***St. Thomas Law Review***; Notes and Comments Editor, Fall 2000
> **Published: 14 St. Thomas L. Rev. 233**
> Book Awards: Constitutional Law, Professional Responsibility, and Interviewing, Counseling and Negotiation
> Activities:  Member, Moot Court, First Place, 2000 Tulane Sports Law Moot Court Competition

**May 1998**  **UNIVERSITY OF SOUTH FLORIDA**, Tampa, Florida
*Bachelor of Arts in Political Science*