

June 28, 2024

**VIA EMAIL ONLY**

Jonathan Pollard, Esq.
jpollard@pollardllc.com
Christopher Prater, Esq.
cprater@pollardpllc.com
Pollard PLLC

RE: Expert Report
*Juan Navarro v. Hollywood Imports Limited, Inc., et. al*
United States District Court Southern District of Florida
Case No.: 0:23-cv-61772-RS

Jonathan and Christopher,

The following is my Amended Expert Report ("Report") in the above-referenced matter. This Report is provided to address new evidence obtained during discovery in this case.

## MATERIALS REVIEWED

In preparing this Report I reviewed the following materials:

- Complaint and Demand for Jury Trial [DE 1]

- Amended Answer, Defenses, and Affirmative Defenses By Defendant Hollywood Imports Limited, Inc. [DE 21]

- Amended Answer, Defenses, and Affirmative Defenses By Defendant AutoNation, Inc. [DE 22]

- Plaintiff Juan Navarro's Responses to Defendant Hollywood Imports, Inc.'s First Interrogatories Sworn to on February 12, 2024

- Plaintiff Juan Navarro's Responses to Defendants' First Request for Admissions

- Declaration of Emanuel Fuentes-Baez, dated March 6, 2024

- Deposition Transcripts of the following individuals:
    - Plaintiff
    - Carl Vanderwarker





- David Losk
- Bibi Bickram

Evidence and Testimony Not Available At The Time of the Original Report

- Navarro v. Hollywood Imports Bates Nos.:
    - 0650 – 0652
    - 0655 – 0656
    - 0663 – 0672
    - 0676 – 0678
    - 0684 – 0690
    - 0692 – 0693
    - 0696
    - 0699 – 0702
    - 0711 – 0712
    - 0734 – 0753
    - 0762 – 0763
    - 0769 – 0777
    - 0795 – 0803
    - 0809 – 0812

- Cary Pacheco Deposition Transcript

- Defendant, AutoNation, Inc.'s Responses to Plaintiff's First Set of Interrogatories

- Defendant, Hollywood Imports Limited, Inc.'s Responses to Plaintiff's First Set of Interrogatories.

## BACKGROUND OF EXPERT

A copy of my *curriculum vitae* is attached as Exhibit A.

I have been licensed to practice law in the State of Florida since October 2001. I am licensed in all state and federal courts in the State of Florida, as well as the United States Court of Appeals for the Eleventh Circuit. During the duration of my legal career, I have been admitted to other United States District Courts *pro hac vice*.

Throughout my legal career, I have served innumerable times as lead counsel representing municipalities and private businesses in civil rights labor and employment (ADA, Title VII, FCRA, FMLA, FLSA etc …) litigation, the vast majority of which has been litigated in federal court. I have also served, on occasion, as lead counsel representing plaintiffs in civil rights labor and employment matters against private businesses.

I have been practicing with the law firm of MLE Law since January 2019, where I am the founder and responsible for the firm's entire practice.



From January 2012 until December 2019, I was an equity partner with Bryant, Miller, Olive P.A. ("BMO"). During my tenure at BMO, not only was I an owner, but I was the co-chair of the firm's litigation practice group. In my role as co-chair, I oversaw all aspects of the firm's litigation.

From August 2007 until December 2011, I was a partner with Fowler, White, Burnett P.A. where I assisted in running the firm's labor and employment department.

From January 2003 until July 2007, I was a partner with Corcoran & Elkins.

From October 2001 until December 2002, I was an associate with Muller Mintz, P.A., which is now known as Akerman.

During the entirety of my almost twenty-three (23) year legal career I have primarily practiced labor and employment law defending management. The majority of my practice was and is defending employers in employment law disputes and representing municipalities in traditional labor disputes.

Additionally, I am routinely hired to conduct workplace investigations, both as a client representative and as an independent investigator. To that end, I have investigated issues relating to hostile work environment, sexual harassment, gender discrimination, race discrimination, national origin discrimination and disability discrimination. I have conducted workplace investigations for both public and private sector employers.

I have also been hired to conduct workplace trainings on internal employment investigation practices.

I have been quoted numerous times as a legal expert on labor and employment matters by national publications such as CNN, Yahoo, USA Today, MSNBC, Yahoo Finance, Forbes, Yahoo Sports, Bloomberg, The New York Daily News, The Miami Herald, Newsweek, SHRM, and Law 360 to name a few.

I have received numerous awards including being recognized by Fort Lauderdale Illustrated as a top labor and employment attorney for 2020 and 2021 and being recognized by the Daily Business Review as South Florida's "Most Effective Employment Lawyer" in 2019.

Further information on my practice, my firm, my publications, my media appearances and more can be found on my website https://mlelawfirm.com.

I am being compensated for my services at a rate of $500/hr.

## SCOPE OF OPINION

I am hired to opine on the sufficiency of certain investigations by and related practices of AutoNation, Inc. ("AN") and Hollywood Imports Limited, Inc. ("HI") (AN and HI are "Defendants"). Additionally, I am hired to opine on whether the failure of management employees to report certain conduct violates standard of care.



## BACKGROUND FACTS

### Plaintiff's Employment History

In approximately March 2022, Plaintiff was hired by Hollywood Imports Limited, Inc. ("HI") as a Sales Associate on the Internet Sales Department Team. *See* Losk Dep. TR:52:12-17.[1] HI operates as an AN car dealership, known colloquially as "AutoNation Honda Hollywood." *See id.* TR:6-7:25-9. HI is one of the dealerships under the AN umbrella. *See* Bibi Bikram ("Bickram") Dep. TR:18-19:17-1.

Plaintiff's direct supervisor was David Losk ("Losk"). *See* Navarro Dep. TR:32-33:23-1. Losk's title is Internet Sales Manager. *See* Losk Dep. TR:7-8:24-19. Losk's direct supervisor is Carl Vanderwarker ("Vanderwarker"). *See id.* TR:10:7-8. Vanderwarker's title is General Sales Manager. *See id.* TR:10:17-18; *see also* Vanderwarker Dep. TR:8:14-16.

### Human Resources

HI's human resources functions are administered through an AN company called Eastern Region Management ("ERM"). *See* Bikram Dep. TR:19:2-15. ERM supports certain AN dealerships and in the context of human resources, operates in a consultive manner. *See id.* TR:19-20:25-13. Specifically, ERM "[provides] HR support in all aspects to associates, if they need help, if there are issues, concerns, if they need help with benefits, if they need help with paperwork, if a manager needs support with coaching, counseling, performance management. So it's -- it's a variety of HR functions that [it] [provides]." *Id.* TR:20-21:20-1. In short, ERM provides a "sort of all the things" function when it comes to HR support. *Id.* TR:21:2-11.

HI's human resources policies come from AN and are contained on AI's Employee Handbook. *See id.* TR:21-22:12-8. HI has the flexibility to modify some non-human resources policies, but generally, the human resources policies cannot be modified and must be followed. *See id.* TR:21-25:22-9. HI is also governed by AN's Code of Business Ethics ("Code"). HI must follow the Code and it cannot be modified. *See id.* TR:25-26:10-11.

If a HI manager receives a complaint of misconduct from a dealership-level employee, the manager is required to report the complaint to ERM. *See id.* TR:61:11-8. The duty to report also extends to misconduct conduct that a HI manager observes and/or hear. *See id.* TR:72-73:1-6.

ERM's human resource managers are called "Market Human Resource Managers" ("MHRMs"). MHRMs are not required to document or log complaints of employee misconduct. *See id.* TR:62:7-16. MHRMs are required to investigate complains of misconduct from both current and former employees. *See id.* TR:75-76:21-4. There is no policy requiring that MHRMs document witness interviews from investigations. *See id.* TR:75:4-20. Ideally, there would be documentation of an investigation, but sometimes there is not a report. *See id.* TR:74:3-12.

---

[1] In citing to deposition transcripts, I use the citation format "TR_:_." The "TR" refers to "transcript," the first number following the TR refers to the page number(s) of the transcript, and the number following the semi-colon refers to the line number(s) of the transcript.

954.401.2608 | www.mlelawfirm.com | 633 S. Andrews Ave., Suite 500, Fort Lauderdale, FL 33301



### Plaintiff's May 14, 2023, Email Complaint

On May 14, 2023, Plaintiff sent an email ("Email Complaint") to Cary Pacheco ("Pacheco"). A copy of the Email Complaint is attached as Exhibit 8 to Plaintiff's deposition and is cited to herein as "Exhibit 8." Therein, Plaintiff alleges that his manager "Joey"[2] violated his personal space by "hugging" him from his back. *See* Exh. 8. Plaintiff further alleges that Rodriguez grabbed him from his back and said to Plaintiff "I like you so much." *See id.* Plaintiff also alleges that Rodriguez' grabbed his ass and nipples, kissed him on his neck, and told him he loved him. *See id.* Finally, Plaintiff alleges that, among numerous other people, Losk and Vanderwarker witnessed the conduct, and that Plaintiff did not initially tell HR because he feared for his job. *See id.*[3]

At the time of the Email Complaint, Bikram was the Vice President of Human Resources, Eastern Region for ERM and Pacheco was the ERM Market Human Resources Manager responsible for HI. *See* Bikram Dep. TR:21:1-4 [4]; TR:58-60:7-14. Bikram was Pacheco's supervisor.

As the Email Complaint is from a former employee, ERM was required to investigate. According to Bikram, Pacheco investigated the allegations in Plaintiff's Email Complaint. *See id.* TR:81-82:20-2. Bikram does not know what Pacheco did in connection with the investigation, did not ask about the details of the investigation and does not know if there are any records of Pacheco's investigation. *See id.* TR:82:3-12. Bikram is unaware if any documents were generated in connection with the investigation. *See id.* TR:79:4-9. According to Bikram, Pacheco said that the allegations in the email could not be substantiated. *See id.* TR:81-82:21-2.

## ADDITIONAL FACTS

### Plaintiff's Complaint

On July 12, 2023, Pacheco admits that she never interviewed Plaintiff about his complaint. *See* Bates No. 0762. Ms. Pacheco only mentions inquiring about the specific allegation of conduct directed to Plaintiff (referred to as "the Juan incident" and "the incident with Juan") that was contained in Faizan's complaint and Rodriguez's "management style". Bates No. 0666-667. Plaintiff's direct allegations were not mentioned or addressed in the documents.

---

[2]   Plaintiff is referring to then HI employee, Joseph "Joey" Rodriguez ("Rodriguez"). Rodriguez is still employed at an AI dealership.

[3]   Plaintiff further details Rodriguez' alleged conduct in his answer to Interrogatory No. 7, and in the Complaint. Plaintiff alleges that, among others, Losk and Vanderwarker witnessed the conduct detailed in the answer to Interrogatory No. 11 and in the Complaint.

[4]   In February 2024, Bikram's title changed to "The Vice President, People Partners." *See* Bikram Dep. TR:30:21-24.



Although she testified that she took notes for each person she interviewed and transcribed them in her email summary (Bates No. 0676-678; Pacheco Dep. TR:91:17-92:7), the summary does not reflect who she interviewed or any specifics about their responses. Bates No. 0676-678. Pacheco could not remember if she spoke to most of the people listed in Defendants' interrogatory responses about Navarro's complaint (the responses purport to list those who were interviewed about Navarro's complaint). Pacheco Dep. TR:112:18-119:2. Pacheco also testified that she interviewed everyone listed on Plaintiff's email about his complaints, but then acknowledge she did not speak to individuals named Wassem (who she said she thinks is not a real person but did not confirm that with Plaintiff) or Manual. When asked about the other witnesses listed by Navarro, Pacheco did not remember whether she spoke to many of them. *Id.*

**Carlos Alcaraz Complaint**

On November 18, 2020, Carlos Alcaraz ("Alcaraz") made a written complaint via email to Cary Pacheco ("Pacheco"). *See* Bates No. 0812. Therein, Alcarez alleges harassment by a co-worker named Carl Vanderwarker ("Vanderwarker"). *See id.* On November 19, 2020, Pacheco's supervisor, Jennifer Strohauer ("Strohauer"), the Senior Regional HR Manager – Eastern Region, enquires about Pacheco's conversation with Alcarez and asks for an update on the allegations against Vanderwarker. *See* Bates No. 0811.

On that same date, Pacheco tells Strohauer that she did not interview Alcarez, but that she did speak with Vanderwarker, who denied most of the allegations. *See* Bates No. 0810. On November 20, 202, Pacheco indicates that she is "waiting to speak with [Alcarez]." *See* Bates No. 0809. On February 5, 2021, Strohauer enquires about the incident and on that same day Pacheco tells Strohauer that she spoke with Alcarez who said that the incident was a "misunderstanding." *See id.* There is no report, and no other documentation that I was provided.

**Raynell Hodge Complaint**

On June 8, 2022, Raynell Hodge ("Hodge") made a written complaint via email which was forwarded to Pacheco for follow up. *See* Bates Nos. 0666-0667. Therein, Hodge alleges, among other things, that he was subjected to a hostile work environment and that "[t]he managers are rude, racist and sexist," that he was "assault[ed] in front of other managers" and that managers "threaten you that calling hr will not be good for you." *See* Bates No. 0666-667.

On June 9, 2022, Bibi Bikram ("Bikram"), then Vice President of Human Resources – Eastern Region, told Pacheco to "look into" Hodge's allegations. *See* Bates No. 0668. On July 20, 2022, Bikram emailed Pacheco asking for: (1) an update on the Hodge's matter; and (2) inquiring about how the matter was closed out. *See* Bates No. 0670. On that same day, Pacheco responded that she "interviewed a good sample of sales associates and all of the sales managers regarding the allegations." *See id.* Pacheco wrote that the allegations were unsubstantiated.

During her deposition, Pacheco could not recall who any of Mr. Hodge's complaints were about or whether she had any involvement in the investigation into his complaints, let alone who she interviewed (if anyone) or what they told her. Pacheco Dep. TR:79:4-17, 99:2-102:7, 120:21-121:19. She maintained that she could not recall whether she had any involvement in the



investigation even after reviewing the correspondence in which she was instructed to investigate the allegations and responded that she had done so. *Id.*; Bates No. 0666-667, 0670-672.

The only document in the record that purports to reflect anything about an investigation was the July 20, 2022, email that Pacheco admitted was not an investigation summary or sufficient documentation of an investigation. Pacheco Dep. TR:121:4-123:6; Bates No. 0670-672. Further, Pacheco does not identify by name who she interviewed, when she interviewed them, or provide a summary of what each witness said. Bates No. 0670-672.

**Asim Faizan Complaint**

On April 6, 2023, Azim Faizan ("Faizan") made a written complaint via email to Pacheco. *See* Bates No. 0801. On or about April 12, 2023, Pacheco spoke with Faizan about his allegations. *See* Bates 0799. On April 18, 2023, Pacheco emailed Faizan, informing him that she and Joe Rey investigated his allegations and did not substantiate his allegations. *See* Bates No. 0798.

There is no report. Further, Pacheco does not provide any detail as to the nature of the investigation. Although Defendants represented in interrogatory responses that Pacheco interviewed more than twenty people, Pacheco does not believe and/or could not remember if she interviewed the majority of those listed. AN Responses to Interrogatories at Nos. 6-7; HI Responses to Interrogatories at Nos. 6-7; Pacheco Dep. TR:104:3-20, 112:18-119:2. Others she confirmed she did not interview in connection with this investigation. *Id.*

Further, on June 14, 2023, after receiving a notice of Plaintiff's EEOC Charge, Pacheco emailed Bikram disclosing that Faizan made complaints about Sales Manager, Joey Rodriguez' conduct. *See* Bates No. 0651. Specifically, Pacheco disclosed, among other things, that Plaintiff had told Faizan that he was going to resign due to Rodriguez hugging him and telling him he loved him. *See id.* Pacheco claims that she spoke with all the sales associates named by Faizan (approximately 14) and "no one corroborated the story." *See id.* Pacheco also states that she spoke with the "GM and all of the sales managers."

Pacheco does not identify by name who she interviewed or provide a summary of what each witness said. The entirety of her documentation of her 'investigation' is reflected on Bates No. 0664.

**HR Training, Policies, and Supervision**

Pacheco's training by Defendants consisted of 4 weeks of shadowing other human resources market managers, attending approximately 3 conferences, training on how to use Defendants' systems, and some trainings by the legal department (the last one was in approximately mid-2021 and included about 2 hours that related to how to complete a report regarding complaints received through the Alert Line (but not received through other means). Pacheco Dep. TR:40:9-42:24, 43:19-44:19, 46:1-48:15. No other training regarding how to handle employee complaints regarding harassment, discrimination, and the working environment was provided by Defendants. *Id.* TR:50:13-24. Defendants only have written policies and procedures



about documenting responses to complaints that come through its Alert Line system. *Id.* TR:49:24-50:12.

Pacheco was the human resources market manager responsible for AutoNation Honda Hollywood during Plaintiff's employment. Pacheco Dep. TR:25:20-26:23, 34:19-35:17. She was also the sole human resources market manager for another 18 locations and approximately 2,000 employees. *Id.* TR:34:19-35:17. Her direct superior was senior market manager Strohauer and Ms. Strohauer's superior was Vice President of Human Resources, Bibi Bickram. *Id.* TR:12:16-13:8, 37:8-14, 38:16-18.

## **EXPERT OPINION**

Regardless of its merit,[5] Plaintiff's Email Complaint raises very serious allegations. The Email Complaint alleges, among other things, battery. Not all complaints to HR are created equal. By way of example, a complaint to HR that one employee was rude to another employee without more is dramatically different than an allegation of hostile work environment that contains an allegation of battery. While HR may not generate a report about the rude employee complaint, HR should have engaged in a reasonable and meaningful investigation into, at least, the complaints by Plaintiff, Mr. Faizan, and Mr. Hodge and then generated a complete and detailed report. The fact that multiple complaints were made about similar conduct and some of the same individuals should have raised red flags. To that end, any reasonable company and reasonable HR professionals should have ensured that those investigations were conducted, documented, and taken appropriate corrective action.

In addition to raising very serious issues like battery, several of the complaints (Plaintiff's, Faizan's, and Hodges) also indicate that there is a systemic culture at HI that allows Rodriguez' alleged behavior. This is evident by the fact that Plaintiff alleges that Rodriguez' conduct was witnessed by the top three (3) managers at HI as well as twelve (12) other HI employees. If Plaintiff's allegations in the Email Complaint are true, there are serious issues as to why the employees who witnessed the conduct, especially management employees, did not report it. More to the point, the failure of employees who witnessed the conduct, especially management employees, to report the alleged conduct was not reasonable and falls below HR best practices/the industry standard of care. Management employees are aware of their duty to report any inappropriate conduct that they witness. Therefore, the failure to do so in this case, assuming the allegations by Plaintiff, Mr. Faizan, and Mr. Hodge are true, was not reasonable and is a human resources deficiency.

Considering the serious nature of the complaints and conduct, industry standards dictate that any reasonable company and reasonable HR professionals should have conducted meaningful investigations that included: (1) interviewing all of the witnesses named and others identified during the investigations; (2) documenting all witness interviews and a timeline of the investigation; (3) generating a detailed report summarizing each witness interview; (4) gathering and attaching relevant documents; (5) detailing findings in light of applicable policies, procedures, and law; and (6) taking appropriate corrective action. If the Company had conducted a reasonable

---

[5] I am not opining on the merit of any allegations, that is for the factfinder.

954.401.2608 | www.mlelawfirm.com | 633 S. Andrews Ave., Suite 500, Fort Lauderdale, FL 33301



investigation and corroborated the allegations against Rodriguez or other managers - particularly any of the allegations of sexual harassment or sexual assault or physical violence – the offending manager should have immediately been fired.

Defendants, through Pacheco and otherwise, didn't even interview Plaintiff or Mr. Hodge (*see* Bates No. 0762 (Plaintiff was not interviewed) and Bates No. 670 (indicating Pacheco spoke to some employees, but not stating she spoke to Mr. Hodge)) about their complaints, nor did they properly document the so-called "investigations" or the witness interviews, and they did not properly document the findings.

Beyond Pacheco's failures, the conduct of her superiors (Jennifer Strohauer and Bibi Bikram) was also not reasonable and below industry standards. As Pacheco's supervisors, Ms. Strohauer and Ms. Bikram should have realized the deficiency of Pacheco's investigations or lack thereof. Their supervision of Pacheco was not reasonable insofar as they did not timely follow-up with Pacheco and failed to require that reasonable investigations be conducted and documented, which should include evidence obtained and the findings from those investigations.

Instead, they accepted Pacheco's conclusory statements that allegations were not substantiated. Based on Bikram's and Pacheco's testimony, along with the documents produced by Defendants, Defendants did next to nothing to ensure that there were thorough and complete investigations into the admittedly serious allegations of Navarro, Hodge, and Faizan.

My opinion is that Defendants' HR professionals' conduct and investigations, even if they were done, were not reasonable, and were far below the industry standards for reasonable HR practices.

Sincerely,

Michael L. Elkins
melkins@mlelawfirm.com

# EXHIBIT A

# MICHAEL L. ELKINS, ESQUIRE

1213 SE Third Ave., Ft. Lauderdale, Florida 33316 ▪ (954) 401-2608 ▪ melkins@mlelawfirm.com

## PROFESSIONAL EXPERIENCE

**January 2019 - Present**

**MLE LAW, LLC**, Fort Lauderdale, FL
Founder – Labor and Employment Law, Business Litigation, Corporate Counsel. Sports Law
- Chair complex labor and employment and business litigation matters, lead trial counsel in numerous labor and employment and business litigation matters
- Conduct numerous workplace investigations on issues such as sexual harassment, hostile work environment and discrimination
- Participate in and coordinate complex collective bargaining negotiations on behalf of management for municipal employers
- Provide counseling to management on issues relating to all aspects of employment practices, including but not limited to, advising on legal issues relating to Title VII, FMLA, FLSA, ADEA and all Florida comparable state statutes
- Negotiate high-level corporate, executive employment agreements
- Provide advice to large to mid-size corporations concerning general corporate matters and corporate governance

**January 2012 – December 2019**

**BRYANT, MILLER, OLIVE, P.A.**, Miami, FL
Equity Partner – Labor and Employment Law, Defending Management Exclusively; Corporate Counsel
*Co-Chair Litigation Practice Group*
- Conduct complex labor and employment litigation, lead trial counsel in numerous corporate labor and employment matters
- Participate in and coordinate complex collective bargaining negotiations on behalf of management for corporate employers
- Provide counseling to management on issues relating to all aspects of employment practices, including but not limited to, advising on legal issues relating to Title VII, FMLA, FLSA, ADEA and all Florida comparable state statutes

**August 2007 – January 2012**

**FOWLER, WHITE, BURNETT, P.A.**, Miami, FL
Partner – Labor and Employment Law, Defending Management Exclusively; Mergers & Acquisitions
- Handled all aspects of labor and employment matters for corporate and public sector clients
- Handled all corporate legal issues for new minority ownership group in their purchase of the Philadelphia 76ers Basketball Club, including but not limited to, handling all purchase and sale agreement negotiations, all limited partnership negotiations, drafting of all general partnership and limited partnership agreements and negotiating all media rights issues
- Negotiated and provided employment contract advice on behalf of several NCAA Division I college basketball coaches and one NBA coach

**January 2003 – August 2007**

**CORCORAN & ELKINS, LLP,** Fort Lauderdale, Florida
Founder – Labor and Employment Law-Defending Management, General Corporate Litigation
- Handled all matters relating to labor and employment law and commercial litigation

**October 2001 – January 2003**

**MULLER MINTZ, P.A., k/n/a AKERMAN SENTERFITT, P.A.**, Miami, FL
Associate – Labor and Employment Law, Defending Management
- Represented management in areas of traditional labor law and employment litigation

## MEDIA APPEARANCES, PUBLICATIONS AND CONFERENCES
- CNN: Your Coronavirus workplace questions answered
- New York Daily News: Colin Kaepernick's collusion grievance a 'mistake' says legal expert
- Yahoo: A Guide to Calling In Sick
- Yahoo: Why Many Companies Won't Be Able to Follow in Twitter's Footsteps With Permanent Remote Work
- Law360: Deflategate Turns 5: How NFL Discipline Has Evolved
- Forbes: Biden's Labor Secretary Nominee Confirmed By Senate; Big Changes Ahead For Business Community
- Newsweek: Baseball is Back; But MLB Labor Dispute Points to Uncertain Future

- Forbes: Impact of COVID on Civil Rights In Workplace Will Be Focus of EEOC Hearing
- Forbes: What the EEOC's Updated Guidelines Mean for Business Leaders
- Forbes: Codes of Conduct and Ethics Can Help Guard Against and Address Crisis Situations
- Miami Healrd: In this 'Me Too' age, enforcing zero tolerance for offensive behavior may come at a cost
- Daily Business Review: Landing and Keeping Government Legal Work: How About a Sports Podcast?
- Also featured in: SHRM, Monster, Inc., Thrive Global, Tech Target
- 2017 Forbes 30 Under 30 Conference
- Attendee, MIT/Sloan Sports Analytics Conference, 2010, 2011, 2012
- Author, "ADA Changes Force Employers to Adjust Disabled Worker Policies," *Daily Business Review*, Special Report: Labor & Employment, March 26, 2009
- Author, "Cyber Spy: What You Don't Know About Employees' Computer Use Could Hurt You," *Winning Bids*, Winter 2008/2009
- Author, "Employers Should Clearly Define Employee Job Functions," *Daily Business Review*, Special Report: Labor & Employment, November 25, 2008

**EDUCATION**

1998 - 2001    **ST. THOMAS UNIVERSITY SCHOOL OF LAW**, Miami, Florida
*Juris Doctor*, May 2001 – ***Cum Laude, Class Rank Top 10%***

Honors: Member, ***St. Thomas Law Review***; Notes and Comments Editor, Fall 2000
**Published: 14 St. Thomas L. Rev. 233**
Book Awards: Constitutional Law, Professional Responsibility, and Interviewing, Counseling and Negotiation

Activities: Member, Moot Court, First Place, 2000 Tulane Sports Law Moot Court Competition

May 1998    **UNIVERSITY OF SOUTH FLORIDA**, Tampa, Florida
*Bachelor of Arts in Political Science*