**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-61772-CIV-SMITH

JUAN NAVARRO,

     Plaintiff,

v.

HOLLYWOOD IMPORTS LIMITED, INC.,
and AUTONATION, INC.

     Defendant.

_____/

# DEFENDANTS' MOTION FOR SUMMARY FINAL JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

*Eric K. Gabrielle*
Eric K. Gabrielle (Florida Bar No. 160725)
Email: egabrielle@stearnsweaver.com
**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
200 East Las Olas Boulevard – Suite 2100
Fort Lauderdale, Florida 33301
Telephone: 954-462-9527
Facsimile: 954-462-9567
*Attorneys for Defendants*

Defendants Hollywood Imports Limited, Inc., and AutoNation, Inc., under Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, move for summary final judgment on the claims filed by Plaintiff Juan Navarro ("Navarro").[1]

I.     **INTRODUCTION.**

However great the demand or need may be for a national workplace civility code, federal civil rights laws were not written to be one.   Nor federal courts deputized to referee it.

To be sure, it has been settled law for nearly four decades that "hostile environment" harassment is a viable theory of sex discrimination, as it should be.    But the legal analysis never ends there.    Only careful attention to the requirements of these statutes and the parameters of these claims prevents important anti-discrimination law from devolving into a general civility code for the American workplace, with courts enmeshed in it all.

For this reason, federal courts like this one resolving motions like this one are obliged to "police the baseline" of hostile environment claims.[2]    Keeping in mind that the governing law places obligations and duties not only on employers "but also on [an] employee [ ] to take full advantage" of his employer's preventative measures.[3]   Something Navarro never did.

II.    **PERTINENT BACKGROUND.**

Navarro makes allegations of workplace sexual harassment against one person, a dealership sales manager named Joey Rodriguez.   But when Navarro's allegations are tested, we find a considerable difference between what Navarro pleads and the actual record.

On that record and the law that governs it, Defendants are entitled to summary final judgment.

A.     **Hollywood Imports Limited, Inc. and AutoNation, Inc.**

Hollywood Imports Limited, Inc., is an automotive dealership in Hollywood, Florida, doing business as AutoNation Honda Hollywood ("Honda Hollywood").[4]   Indirectly owned by AutoNation,

---

[1] Defendants' Statement of Material Facts appears at ECF No. 57 and an Index to Defendants' summary judgment evidence appears at ECF No. 55-1.

[2] *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1245 n. 80 (11th Cir. 2001).

[3] *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1306-07 (11th Cir. 2007).

[4] Statement of Facts (ECF No. 57), ¶ 1.

Inc. ("AutoNation"), the dealership was then part of AutoNation's Eastern Region.[5]  For simplicity's sake, from here we refer to the dealership as "Honda Hollywood."

Employees of Honda Hollywood are known as "Associates."[6]   For the thirteen (13) months between late March 2022 and his resignation effective at the end of April 2023, Navarro was one.[7]

### B.     The AutoNation Anti-Harassment policy and reporting procedure.

During that time frame, certain directives, policies, procedures, training and operational components of Honda Hollywood originated with an AutoNation affiliate known as Eastern Region Management.[8]   As it matters here, those included steps taken by Eastern Region Management on behalf of AutoNation and Honda Hollywood to prevent workplace harassment, encourage Associates to raise concerns about it, and maintain avenues for them to do so.[9]

To that end, AutoNation has a strong Policy Prohibiting Harassment wedded to well-defined reporting channels.[10]   The policy covers every form of unlawful harassment including harassment based on sex.[11]  The policy is set forth in AutoNation's Associate Handbook and its Code of Business Ethics.[12]  When first employed, Associates are informed of the policy and reporting procedure and required to acknowledge having received and read them.[13]

The anti-harassment policy clearly defines sexual harassment to include "[u]nwelcome sexual advances" and other "verbal or physical conduct of a sexual nature."[14]   Associates are specifically

---

[5] Statement of Facts (ECF No. 57), ¶ 1.

[6] Statement of Facts (ECF No. 57), ¶ 2.   It is undisputed that Honda Hollywood employed Navarro. ECF No. 21, ¶ 2.   Navarro alleges that AutoNation "jointly employed" him too.   ECF No. 1, ¶ 15. Defendants deny that.   ECF No. 21, ¶ 2; ECF No. 22, ¶ 2.   But that dispute is not pertinent to the present Motion.

[7] ECF No. 1, ¶ 19; ECF No. 21, ¶¶ 2, 19; ECF No. 22, ¶¶ 2, 19.

[8] Statement of Facts (ECF No. 57), ¶ 3.

[9] Statement of Facts (ECF No. 57), ¶¶ 3, 7.

[10] Statement of Facts (ECF No. 57), ¶¶ 3, 7.

[11] Statement of Facts (ECF No. 57), ¶¶ 4, 6.

[12] Statement of Facts (ECF No. 57), ¶ 4.

[13] Statement of Facts (ECF No. 57), ¶ 5.  Navarro did.  Statement of Facts (ECF No. 57), ¶ 9.

advised that each of them "has a responsibility to report all incidents of harassment" and assured no retaliation will be tolerated against anyone for doing so.[15]

Multiple ways are provided for an Associate to report harassment.[16]   These include: (i) reporting conduct to the Associate's manager; (ii) reporting conduct to another manager the Associate is comfortable speaking to; (iii) reporting conduct to Corporate or Region Human Resources, the Legal Department or the Business Ethics Committee; or (iv) using the AlertLine, a toll free third-party monitored and continuously staffed resource made available to Associates to make reports, which are routed directly to the AutoNation Legal Department.[17]

### C.     Navarro's employment and his resignation.

Navarro was hired as a sales associate by Honda Hollywood effective March 23, 2022 and remained continuously employed there until his resignation thirteen months later.[18]   Within a day, Navarro was provided with the Associate Handbook and the Code of Ethics explaining the anti-harassment policy and the reporting procedure.[19]

Navarro's direct supervisor at Honda Hollywood was David Losk, the Internet Sales Manager.[20]   David Losk's direct supervisor was Carl Vanderwarker, the General Sales Manager.[21]

---

[14] Statement of Facts (ECF No. 57), ¶ 6; Associate Handbook (ECF No. 54-9), pp. 0015-0016.

[15] Statement of Facts (ECF No. 57), ¶ 6; Associate Handbook (ECF No. 54-9), pp. 0013.

[16] Statement of Facts (ECF No. 57), ¶ 7; Associate Handbook (ECF No. 54-9), p. 0016.

[17] Statement of Facts (ECF No. 57), ¶ 7.

[18] Statement of Facts (ECF No. 57), ¶ 8.

[19] Statement of Facts (ECF No. 57), ¶ 9.

[20] Statement of Facts (ECF No. 57), ¶ 10.   Navarro considered Losk a "good character" and encouraged Losk to seek higher positions like General Sales Manager and General Manager.  Navarro Depo. (ECF No. 50-1), 63/5; ECF No. 54-12, page 3 of 4.  But Navarro also thought Losk "[didn't] have balls" because in Navarro's view Losk let himself be ill-treated by Carl Vanderwarker and Joey Rodriguez.  *See* Navarro Depo. (ECF No. 50-1), 211/11-213/1.

[21] Statement of Facts (ECF No. 57), ¶ 10.  Navarro thought Vanderwarker "a rat."  Navarro Depo. (ECF No. 50-1), 210/12-20.   According to Navarro, Vanderwarker criticized and yelled at a lot of people, including David Losk, but Navarro did not consider Vanderwarker's conduct to be sexual harassment.  ECF No. 50-1, 96/11-13, 178/6-14.   Nor did Navarro claim such in the EEOC Charge that defines the scope of his judicial claims.  *See* ECF No. 54-3, pages 1 and 2 of 6.

Vanderwarker's direct supervisor was Joe Rey, then the dealership's General Manager.[22]   Joey Rodriguez was another Sales Manager.[23]   Each of these managers received regular training regarding their responsibilities under the AutoNation anti-harassment policy.[24]

By both Navarro's account and Losk's, Navarro's job performance was top tier for every one of the thirteen months he worked at Honda Hollywood.[25]   Navarro was always a top performer, at the top of the entire dealership's weekly sales results, and Navarro considered his own performance as worthy of the highest rating.[26]

But Navarro's compensation did not match his expectations.[27]   After a year at Honda Hollywood, Navarro was contacted in March 2023 by a former coworker, who told Navarro that a dealership known as Ocean Mazda was opening a new location.[28]   Before the end of that month, Navarro was verbally offered a job by Ocean Mazda and knew he would be leaving AutoNation.[29]

The evening of April 6, 2023, Navarro emailed his resignation to his supervisor, Losk:

> I'm turning in my two-week resignation.   I have found an opportunity somewhere else, but I would like to thank you and Autonation for the opportunity working here.   I wish you well and [hope] one day we will cross paths again.[30]

---

[22] Statement of Facts (ECF No. 57), ¶ 10.

[23] Statement of Facts (ECF No. 57), ¶ 10.   Navarro believes Joe Rey and Joey Rodriguez are related. EEOC Charge (ECF No. 54-3), page 2 of 6.   They are not.   Rey Decl. (ECF No. 53-3/56-1), ¶ 2.

[24] Statement of Facts (ECF No. 57), ¶¶ 11-14.

[25] Statement of Facts (ECF No. 57), ¶ 15.

[26] Statement of Facts (ECF No. 57), ¶ 15.

[27] Navarro Depo. (ECF No. 50-1), 41/14 – 42/3.

[28] Statement of Facts (ECF No. 57), ¶ 16.

[29] Statement of Facts (ECF No. 57), ¶ 17.   On Friday, April 7, 2023, Navarro received a written offer from Ocean Mazda, confirming the previous verbal offer.   Statement of Facts (ECF No. 57), ¶ 17; ECF No. 53-2.   Navarro's job at Ocean Mazda was available beginning Monday, April 10, 2023. Statement of Facts (ECF No. 57), ¶ 17; ECF No. 53-2.

[30] Statement of Facts (ECF No. 57), ¶ 18.   Navarro had provided verbal notice to Losk before that, but is not sure when.   Navarro Depo. (ECF No. 50-1), 61/25-62/22.

Navarro's resignation included a two-week notice period, making his last day April 20, 2023.[31]   But the night of his scheduled last day, Navarro texted David Losk, asking to extend his notice date to April 30:   "I'm going to be with you till the 30th.   Are you ok with that?"[32]   Losk agreed, texting back that it "would be great to have" Navarro.[33]   Navarro's last day at Honda Hollywood was April 29, 2023, over three weeks after the day he resigned.[34]

**D.     Navarro's failure to raise issues of harassment before resigning.**

Joey Rodriguez is the only person Navarro claims sexually harassed him.[35]     During Navarro's employment, Navarro never told anyone about that.   Not David Losk, Navarro's immediate supervisor.[36]   Not Carl Vanderwarker, Losk's and Rodriguez's immediate supervisor.[37]     Not the General Manager of the dealership, Joe Rey.[38]

Not Cary Pacheco, the offsite Human Resources professional assigned to Honda Hollywood, even though she visited the dealership several times during Navarro's employment and was someone he knew he could communicate with about his work environment.[39]   At least three or four times during Navarro's tenure at Honda Hollywood, Navarro was aware that Cary Pacheco was visiting the

---

[31] Statement of Facts (ECF No. 57), ¶ 18.

[32] Statement of Facts (ECF No. 57), ¶ 19.

[33] Text message exchange (ECF No. 54-17).  Despite this text message exchange, Navarro claims the reason he stayed at Honda Hollywood beyond April 20, 2023 was because Losk asked him to.  Navarro Depo. (ECF No. 50-1), 32/10-14.   What matters most is that with a new job available on April 10, 2023, Navarro still stayed nearly three weeks after he could have started that job.  *See* fn. 30-34, 85-90 and accompanying text.

[34] Statement of Facts (ECF No. 57), ¶ 20.

[35] Navarro Depo. (ECF No. 50-1), 19/17-19.

[36] Statement of Facts (ECF No. 57), ¶ 22.

[37] Statement of Facts (ECF No. 57), ¶ 23.

[38] Statement of Facts (ECF No. 57), ¶ 24.

[39] Statement of Facts (ECF No. 57), ¶ 25.

dealership.[40]    Navarro never tried to speak with her, to communicate about Rodriguez.[41]   Nor did Navarro ever call the AutoNation AlertLine for any reason.[42]

Navarro knew how to raise concerns under the anti-harassment policy – he just chose not to. According to Navarro, he thought "a thousand times" about contacting Human Resources about Rodriguez, but admits he never did.[43]   He considered it a "waste of time."[44]

_After_ tendering his resignation but before ending his employment over three weeks later, Navarro made desultory attempts to contact Human Resources, but bends that record well out of shape in his Complaint.  There,  Navarro alleges that after he "hit a breaking point," in "early April 2023, he called AutoNation's human resources department and left a voice mail asking that someone return his call  [ ] but [n]obody responded."[45]   So, Navarro alleges, he "drove to AutoNation's headquarters in downtown Fort Lauderdale," walked in and "asked to speak with someone in human resources" and was "turned away."[46]   Then, Navarro pleads, "[o]n April 7, 2023, [he] resigned."[47]    From this, Navarro asks us to conclude that he resigned only after his efforts to raise concerns were unsuccessful.

Navarro's allegations are entirely misleading, proven by his own testimony.    Deposed, Navarro admitted that _both the alleged phone call and the alleged visit were only after Navarro had already tendered his resignation_ on April 6, 2023.[48]    Further, Navarro is not even sure he actually

---

[40] Statement of Facts (ECF No. 57), ¶ 25.

[41] Statement of Facts (ECF No. 57), ¶¶ 25.

[42] Statement of Facts (ECF No. 57), ¶¶ 26.

[43] Navarro Depo. (ECF No. 50-1), 144/3-20.

[44] Navarro Depo. (ECF No. 50-1), 78/15-79/13.   Navarro complained about Rodriguez in other ways. Navarro complained to Losk that Rodriguez "[didn't] do anything to earn his pay."  ECF No. 54-12, page 3 of 4.   Navarro complained to Losk that Rodriguez was "[too] problematic when it comes to working deals."  ECF No. 54-12, page 1 of 4.   But never about sexual conduct.

[45] Complaint (ECF No. 1), ¶ 28.

[46] Complaint (ECF No. 1), ¶ 29.

[47] Complaint (ECF No. 1), ¶ 30.

[48] Navarro Depo. (ECF No. 50-1), 69/4-72/12, 158/24-159/7, 162/2-6.

left a voice mail on the human resources line, could not identify the date of call and made no follow-up call.[49]

As for Navarro's visit to AutoNation's headquarters, according to Navarro when he arrived there he told the security guards in the lobby that he wanted to "speak with someone in human resources."[50]   Navarro did not tell the security guards that he felt he was being mistreated.[51]   Navarro was told he needed to make an appointment, but he never did so.[52]

Because, just like Navarro's choice not to contact Human Resources before tendering his resignation, Navarro considered it a "waste of time."[53]

### E.    Navarro's email to Cary Pacheco two weeks after his employment ended.

Two weeks after his last day at Honda Hollywood and now contemplating litigation, Navarro finally contacted Human Resources.   On Sunday night, May 14, 2023, Navarro sent an email to Cary Pacheco.[54]    In that email, captioned "Why I resigned," Navarro levied his very first allegations of improper physical and verbal sexual conduct by Rodriguez.[55]   Like the allegations of Navarro's Complaint, Navarro misstates the timeline of his alleged phone call to Human Resources, implying it was "months" earlier than it was and that it was before he tendered his resignation, which it was not.[56]

In his email, Navarro made reference to taking legal action.[57]   He soon did.

---

[49] Navarro Depo. (ECF No. 50-1), 69/4-71/21, 71/18-21.

[50] Navarro Depo. (ECF No. 50-1), 75/9-76/21.

[51] Navarro Depo. (ECF No. 50-1), 75/9-76/21.

[52] Navarro Depo. (ECF No. 50-1), 75/9-76/21.

[53] Navarro Depo. (ECF No. 50-1), 75/9-76/21

[54] Email exchange between Navarro and Cary Pacheco on May 14, 2023 and May 15, 2023 (ECF No. 54-8).

[55] Email exchange (ECF No. 54-8).   As already discussed, Navarro's email contains certain assertions Navarro's testimony now proves inaccurate.   *See* fn. 48-53 and accompanying text.

[56] Navarro Depo (ECF No. 50-1), 70/21-71/21, 158/24-159/7.

[57] ECF No. 54-8, page 2 of 2.

**F.      Navarro's EEOC charge and this lawsuit.**

On June 9, 2023, Navarro submitted the administrative charge to the Equal Employment Opportunity Commission (EEOC) that is a mandatory prerequisite to statutory discrimination claims.[58]      His charge alleges sex discrimination based on sexual harassment.[59]      At Navarro's request, the EEOC dismissed the charge so he could sue.[60]

On September 13, 2023, Navarro filed this action.[61]   Navarro alleges violation of Title VII of the Civil Rights Act of 1964 ("Title VII") in the form of "constructive discharge" and "hostile work environment."[62]      Navarro alleges the same legal theories as violations of the Florida Civil Rights Act (FCRA), Fla. Stat. §§ 760.01 – 760.11.[63]      Navarro also alleges claims for negligent supervision and retention under Florida common law. [64]   He seeks damages of over thirty million dollars.[65]

**G.      The alleged conduct upon which Navarro's claims are based.**

Each of Navarro's claims are premised on the same allegations.[66]  Namely: (1) that Rodriguez made sexual advances on Navarro and touched Navarro inappropriately and without his permission; and (2) the allegations that a "culture of sexual harassment and assault, lewd behavior, vulgarity, and racism" existed in Navarro's workplace.[67]

---

[58] ECF No. 54-3.

[59] ECF No. 54-3.

[60] ECF No. 54-3.

[61] *See* ECF No. 1.  The initial progress of this case was delayed by a petition Navarro had filed in the local bankruptcy court on August 5, 2023.   *See* ECF No. 13-14, 16-20, 21, 23.

[62] *See* Complaint (ECF No. 1), Count III, at ¶¶ 53-57 and Count IV, at ¶¶ 58-66.

[63] *See* Complaint (ECF No. 1), Count V, at ¶¶ 67-73 and Count VI, at ¶¶ 74-82.

[64] *See* Complaint (ECF No. 1), Count I, at ¶¶ 31-40 and Count II, at ¶¶ 41-50.

[65] *See* ECF No. 54-27, pages 6 and 7 of 9.

[66] Here, we recite the conduct Navarro has sworn to because for purposes of this Motion that is what the Court considers.   There are valid grounds to doubt Navarro's fidelity to the oath.   *See* Navarro Depo. (ECF No. 50-1), 12/24-25, 218/5-219/6.

[67] Complaint (ECF No. 1), ¶¶ 20, 25.   By "racism," Navarro refers to his allegation that he was called "Mexican" which he is not.   *See* Complaint (ECF No. 1), page 5, n. 2.

In sum then, Navarro relies on two categories of conduct:   (1) improper verbal and physical behavior directed toward Navarro which he considered sexual advances; and (2) what courts in these sorts of cases term "general office vulgarity."[68]

<u>Allegations of conduct toward Navarro</u>

Navarro estimated that Rodriguez touched him in a way Navarro thought was improper between 12 and 16 times over a period of between six to eight months.[69]  Navarro was obliged to fully describe each instance or incident - including the complete detail of the incident, the date and location where it occurred, and each person Navarro thought might have witnessed the conduct.[70]

Navarro identified the following specifics making up the 12 to 16 incidents:   Rodriguez "hugging" Navarro from behind (three to four times), sniffing and kissing Navarro's neck (four to five times), rubbing or pinching Navarro's nipples (three to five times), and slapping Navarro on the buttocks (multiple times).[71]  Navarro also identified one instance in which he alleges Rodriguez "reached toward [his] genitals like he was going to flick or grab them," but Navarro pushed Rodriguez away.[72]

According to Navarro, the very first incident of physical conduct by Rodriguez occurred in June, July or August 2022, after Navarro had been employed for several months.[73]   Rodriguez sent Navarro to get paper for the copier from the second floor and while Navarro was there, Rodriguez came up behind Navarro, grabbed and hugged him from the back, and made verbal comments Navarro viewed as a sexual advance.[74]   No one witnessed this incident, and Navarro did not report it to

---

[68] *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810-811 (11th Cir. 2010).    This distinction is pertinent, as explained later, to the Court's consideration of the sufficiency of Navarro's showing of sex discrimination.

[69] Navarro Depo. (ECF No. 50-1), 147/13-156/10.

[70] First Interrogatories to Navarro (ECF No. 54-4), page 7 of 10, No. 11(a)–(e).

[71] Responses to First Interrogatories (ECF No. 54-5), pages 4 through 7 of 11, No. 11.

[72] Responses to First Interrogatories (ECF No. 54-5), pages 6 of 11 (first bullet point).

[73] Navarro Depo. (ECF No. 50-1), 147/1-148/18.

[74] Navarro Depo. (ECF No. 50-1), 147/1-148/18.   Navarro responded to the hug by saying "what the fuck?," to which Rodriguez said "I like you so much" and "just give me five minutes."   Navarro responded "you're crazy," and Rodriguez smiled and Navarro walked away.   Navarro Depo. (ECF No. 50-1), 147/13-149/14.

anyone.[75]   According to Navarro, the _last_ time Rodriguez touched him or attempted to touch him improperly was in January 2023, more than two full months before Navarro tendered his resignation.[76]

Thus, taken at face value, Navarro alleges 12 to 16 instances of touching over a period of no fewer than six (6) months (August 2022 to January 2023) and no more than eight (8) months (June 2022 to January 2023).   Put another way, the instances of physical touching Navarro attributes to Rodriguez average fewer than three (3) per month.   Navarro also alleges that approximately once a week, Rodriguez would "moan sexually and whisper [ ] things like 'I love you' and 'I like you so much'" to Navarro.[77]

Finally, Navarro alleges that Rodriguez referred to Navarro as a "pussy," after Navarro spoke to Losk about "business or deal related issues [Navarro] was having with [ ] Rodriguez."[78]

<u>Allegations of general vulgarity</u>

Navarro alleges that Rodriguez, heard by both male and female employees, "frequently made noises with his mouth, simulating a person having an orgasm" at "the front desk" of the Dealership, in the Internet Department, and broadcast over the Dealership intercom.[79]

Navarro alleges that Rodriguez would "talk [ ] about sex, including with other managers" in front of Navarro and other employees and would "watch[ ] pornography on his cell phone."[80]   Finally, Navarro alleges that Rodriguez would "make sexual gestures and noises."[81]   Navarro alleges that this was witnessed by multiple other employees.[82]

---

[75] Navarro Depo. (ECF No. 50-1), 149/15-19, 152/13-153/2,

[76] Navarro Depo. (ECF No. 50-1), 154/13-156/6.

[77] Responses to First Interrogatories (ECF No. 54-5), page 6 of 11.

[78] Responses to First Interrogatories (ECF No. 54-5), page 6 of 11.

[79] Responses to First Interrogatories (ECF No. 54-5), page 4 of 11.

[80] Responses to First Interrogatories (ECF No. 54-5), page 4-5 of 11.

[81] Responses to First Interrogatories (ECF No. 54-5), page 4-5 of 11. According to Navarro, this consisted of Rodriguez "putting his feet on a desk, spreading his legs and making sexual noises and touching his testicles through his pants."  Navarro also claims he "saw [ ] Rodriguez put his legs up in the air, point his fingers toward his anus, and make sexual noises."  Navarro also claims he "saw [ ] Rodriguez put two fingers in front of his mouth in a V-shape and [make] licking motions through his fingers as if he was performing oral sex on a woman."

[82] Responses to First Interrogatories (ECF No. 54-5), page 4 of 11.

As always in cases like this, the question for the Court is _not_ whether the conduct Navarro attributes to Rodriguez is improper, unprofessional, immature, crass, profane, or offensive.  Or all of those things.   Few would argue otherwise.

Rather, the question for the Court is whether the conduct Navarro attributes to Rodriguez is severe and pervasive enough to be actionable, as sex discrimination.  When measured against the law of our Circuit, the answer is no.

### III.   LEGAL ARGUMENT.

Each set of Navarro's claims should be dismissed on summary judgment.     Navarro's constructive discharge claims fail as a matter of law, because no reasonable jury could find a connection between Navarro's resignation and any intolerable working conditions.   Even were we to imagine that connection, Navarro never provided Defendants an opportunity to address the matters he raised - for the very first time - two weeks after his employment ended.

Navarro's hostile environment claims also fail as a matter of law.    When we look past Navarro's allegations and characterizations, squarely at the substance of those allegations, Navarro's alleged experience at Honda Hollywood falls short of the severity standard applied by in this Circuit.

Finally, Navarro's common law negligence claims also fail, because there is no factual basis to impose liability under the law that governs those theories.

### A.   NAVARRO'S CONSTRUCTIVE DISCHARGE CLAIMS FAIL AS A MATTER OF LAW.

Counts III and V of Navarro's Complaint rely on a theory of "constructive discharge" under Title VII and the FCRA.   The legal analysis is the same under either law.[83]  A plaintiff who advances a constructive discharge claim must show his working conditions were "so intolerable that a reasonable person would have felt compelled to resign."[84]

### 1.   The undisputed facts preclude the conclusion that Navarro's resignation can be attributed to conduct by Rodriguez.

---

[83] "[D]ecisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.   _Harper v. Blockbuster Entertainment Corp._, 139 F.3d 1385, 1387 (11th Cir. 1998)(collecting cases).   No Florida court has interpreted the FCRA to impose substantive liability where Title VII does not.  _Id._

[84] _Pennsylvania State Police v. Suders_, 542 U.S. 129, 147, 124 S.Ct. 2342, 2354, 159 L.Ed.2d 204 (2004).

Logic matters on summary judgment too.  No reasonable jury could find Navarro's resignation was compelled by intolerable working conditions.    Navarro resigned from Honda Hollywood only _after_ finding another job, and then did not even leave right away.

Instead, Navarro voluntarily provided two weeks notice, then stayed longer in what the record certainly suggests was at Navarro's own request.    Navarro tendered his resignation on April 6, 2023, first giving fourteen (14) days notice, then voluntarily working _another_ nine (9) days, seemingly asking his supervisor David Losk for the opportunity to do so.[85]

Navarro tendered that resignation only _after_ securing a new job with Ocean Mazda, which he was scheduled to begin Monday, April 10, 2023.[86]    Courts reject constructive discharge claims based on facts like these.[87]    Which makes sense.   It is "difficult for a reasonable person to accept that an employee would voluntarily agree to work for a longer time in an atmosphere so intolerable that [he] felt obliged to resign in order to escape it."[88]

There is more.   In Navarro's resignation email to Losk, Navarro thanks AutoNation for the opportunity to work at Honda Hollywood.[89]    A letter of resignation expressly thanking an employer does not "lend support to a theory that plaintiff was forced to resign due to 'intolerable' working conditions."[90]

---

[85] Statement of Facts (ECF No. 57), ¶¶ 17-19.

[86] Statement of Facts (ECF No. 57), ¶ 17.

[87] _See, e.g., Vargas v. Florida Crystals Corp._, 2019 WL 8955114, *6 (S.D. Fla. May 13, 2019)(a "record [that] indicates that Plaintiff game two weeks notice prior to her last day [ ] does not support a theory that Plaintiff's working conditions were intolerable"); _Johnson v. Neopost, Inc._, 2007 WL 9701787, *26 (N.D. Ga. Mar. 4, 2008)("Plaintiff's decision to wait 14 days to resign after submitting his resignation letter undercuts his constructive discharge claim"), _report and recommendation adopted by_, 2008 WL 11406067 (N.D. Ga. Mar. 4, 2008);  _Johnson v. Wal-Mart Stores, Inc._, 987 F.Supp. 1376, 1394 (M.D. Ala. 1997)("that [plaintiff  gave] three weeks notice before leaving her position strongly suggests that the conditions to which she allegedly [was] subjected were not intolerable").

[88] _Rodriguez v. Graham-Windham Services to Families and Children_, 2001 WL 46895, *6 (S.D.N.Y. Jan. 18, 2001)(granting summary judgment where plaintiff delayed her departure at the request of the allegedly discriminating supervisor).

[89]  _See_ ECF No. 54-1.

[90]  _Graham v. State Farm Mut. Ins. Co._, 193 F.3d 1274, 1284 (11th Cir. 1999); _see also Vizcaino v. Caterpillar Logistics Services, Inc._, 2008 WL 11331840 (S.D. Fla. May 28, 2008)(identifying thank

**2.      Navarro's constructive discharge also fails because before resigning he gave Defendants no chance to address his alleged work environment.**

Navarro resigned on April 6, 2023, worked through the end of that month, and only then - two weeks later - emailed his May 14, 2023 complaint to say "why [he] resigned."[91]

Again, the only person Navarro accuses of sexual harassment is Joey Rodriguez.[92]   Before resigning, Navarro never complained to anyone about the conduct he attributes to Rodriguez:   not Honda Hollywood's management staff, not Human Resources, and not anyone else.[93]    To do so, Navarro thought, was a "waste of time."[94]

A constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation."[95]     Navarro's employment was over at the end of April 2023.  Only then, Navarro complained for the first time about sexual harassment in his workplace.

Which by then Navarro had permanently left.

**3.      The conduct attributed to Rodriguez is insufficient to support a claim for constructive discharge as a matter of law.**

The conduct Navarro attributes to Rodriguez does not meet the severity standards of this Circuit.  *See* Section III B. 1 below.    "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim."[96]

---

you note to employer at the time of resignation as persuasive summary judgment evidence of no constructive discharge).

[91] Statement of Facts (ECF No. 57), ¶¶ 16-20; Email exchange (ECF No. 54-8).

[92] Navarro Depo. (ECF No. 50-1), 91/17-19.

[93] Statement of Facts (ECF No. 57), ¶¶ 20-26; Navarro Depo. (ECF No. 50-1), 81/6-18, 116/1-15, 117/1-7, 144/3-20, 216/23-217/5, 224/17-225/5.

[94] Navarro Depo. (ECF No. 50-1), 78/15-79/13.

[95] *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996)(where "[n]one of the plaintiffs returned to work after complaining to the company's corporate management [ ] [s]ummary judgment on the constructive discharge claim was appropriate [because] the plaintiff did not allow sufficient time" for the employer to correct the situation); *Stancombe v. New Process Steel LP*, 652 Fed.Appx. 729, 737 (11th Cir. 2016)(*accord*).

[96] *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009).

A plaintiff who cannot show a hostile work environment "likewise cannot meet the higher standard required to establish a constructive discharge claim."[97]

**B.     NAVARRO'S HOSTILE WORK ENVIRONMENT CLAIMS FAIL
          AS A MATTER OF LAW.**

Like his constructive discharge claims, Navarro's federal and state law hostile work environment claims are governed by the same body of law.[98]  Those claims fail when scrutinized.

Navarro must make five showings.     *First*, that he belongs to a group protected from sex discrimination; *second*, that he has been subjected to unwelcome harassment; *third*, that the harassment was based on sex; *fourth*, that the harassment was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and *fifth* that there is a basis for holding Defendants liable.   *Mendoza* 195 F.2d at 1244.

No plaintiff struggles with the first showing.    Navarro belongs to a group protected against sex discrimination, as do we all.[99]  The second required showing (the unwelcome nature of alleged conduct) is seldom contested, and is not here.   But it is after this point Navarro's case breaks down. Because Navarro's claims depend on allegations of the sort of "indiscriminate vulgarity" that courts carefully distinguish from sex-based conduct in sexual harassment cases based on an alleged hostile work environment.

What remains, even aggregated as it must be, falls well below the high bar for harassment claims in this Circuit.

**1.     The conduct alleged is not severe or pervasive enough to be actionable.**

"The Eleventh Circuit [ ] has delineated a minimum level of severity necessary for harassing conduct to constitute discrimination, and the bar is quite high."[100]   Courts consider:  (1) the frequency of the alleged conduct; (2) its severity; (3) whether it is physically threatening or humiliating or merely an offensive utterance; and (4) whether it unreasonably interferes with the employee's work

---

[97] *Stancombe*, 652 Fed. Appx. at 737.

[98] *See* fn. 83 above.

[99] *Williams v. Raytheon Co.*, 220 F.3d 16, 19 (1st Cir. 2000)("every person is in a class protected against gender discrimination").

[100] *Manganiello v. Town of Jupiter Inlet Colony*, 2013 WL 6577377, *7 (S.D. Fla. Dec. 16, 2013).

performance.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Like virtually any legal standard, determining whether this standard is met is aided and guided by exemplar cases where it was not.[101]   Physical conduct and verbal conduct more severe than that alleged here has been deemed insufficient to constitute workplace harassment.[102]   In some cases, conduct far more threatening than *anything* Navarro claims he experienced from Rodriguez.[103]

Here, Navarro's case falls short.    Further demonstrated by the absence of any impact on Navarro's job performance.[104]   While lack of impact on job performance is not fatal to a harassment claim, a plaintiff's testimony that she was "doing well at work and had not had any work performance issues prior to her termination [ ] completely undercuts the job performance factor."[105]

Aware it seems of the gap in his case, Navarro seeks to bridge it with allegations about the general vulgarity of his workplace.  But it is well established that "Title VII does not regulate mere offensive utterances or general vulgarity."  *Ahern v. Delta Air Lines, Inc.*, 609 F.Supp.3d 1314, 1332 (S.D. Fla. Jul. 5, 2022)(citations omitted).

Courts look differently on "general vulgarity or references to sex that are indiscriminate in nature."  *Reeves*, 594 F.3d at 809.   "[S]exual language and discussions that truly are indiscriminate do not themselves establish sexual harassment under Title VII."  *Id.*   What matters is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which

---

[101] *See Manganiello*, 2013 WL 6577377 at \*8 (identifying other cases as "instructive").

[102] *See, e.g., Mitchell v. Pope*, 189 Fed. Appx. 911 (11th Cir. 2006)(finding no severe or pervasive sexual harassment over four years where plaintiff asserted 16 specific instances of offensive utterances and conduct by her supervisor, including attempting to kiss her, lifting her over his head, rubbing up against her and reaching across her chest); *Tatt v. Atlanta Gas Light Co.*, 138 Fed. Appx. 145, 147 (11th Cir. 2005)(finding alleged sexual harassment not sufficiently severe or pervasive where plaintiff presented evidence that once a week for two years, when she presented manager with paperwork to sign, he would pretend to unzip his pants and urinate all over the paperwork); *Mendoza*, 195 F.3d at 1238 (finding no severe or pervasive sexual harassment where male employee rubbed his hip against plaintiff while touching her and smiling, made sniffing sounds while looking at her groin area twice, constantly followed and stared at her, and stated he was getting "fired up" in her presence).

[103]  *See Bourne v. School Board of Broward County*, 2012 WL 12894235, \*10 (S.D. Fla. Feb. 13, 2012)(collecting cases).

[104]  Statement of Facts (ECF No. 57), ¶ 15.

[105] *Moore v. Treatment Centers of America Group, LLC*, 972 F.Supp.2d 1359, 1368 (M.D. Ga. 2013).

members of the opposite sex are not exposed."   *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Here, the generally vulgar behavior Navarro attributes to Rodriguez was – if it occurred –at the front desk, in the internet department, and over the intercom broadcast throughout the dealership, where numerous other co-workers and managers (including those who worked in the internet sales department, showroom, finance department, service department, and front desk) could hear it.[106]

None of this is proof of a gender-based hostile work environment, because however unpleasant all this sounds, it does not show that "members of one sex [were] exposed to disadvantageous terms or conditions to which members of the other sex are not exposed." *Baldwin*, 480 F.3d at 1301-02.   A "generally vulgar workplace [with] indiscriminate insults and sexually laden conversation - but not gender-specific to the plaintiff or his protected group - is not generally actionable standing alone, because Title VII has never been a "general civility code."[107]

> **2.     There is no basis for employer liability.**

Finally even if we set aside Navarro's failure to meet the above standards, his claim still fails. Because Navarro cannot establish the final required showing:  a basis to hold Defendants liable. *Mendoza,* 195 F.2d at 1244.

"Even if an employee establishes a *prima facie* case of sexual harassment, an employer can avoid liability if the employer shows (1) that it exercised reasonable care to prevent and promptly correct harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, or to otherwise avoid harm."[108]

> **(a)     Reasonable care was exercised.**

---

[106] Responses to Interrogatory No. 11 (ECF No. 54-5), ECF page 4 of 11 (document page 4).  Navarro identified both male and female employees as those who he believes "heard this behavior." Responses to Interrogatory No. 11 (ECF No. 54-5), ECF page 4 of 11 (document page 4).

[107] *See Reeves*, 594 F.3d at 809.

[108] *Frederick v. Sprint/United Mgmt.*, 246 F.3d 1305, 1313 (11th Cir. 2001).  This affirmative defense, established by *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), is known ever since as the *Faragher/Ellerth* defense.  The defense also applies to claims under the FCRA.  *See, e.g., White v. Creative Hairdressers, Inc.*, 503 Fed. Appx. 938, 941, 2013 WL 203312, *2 (11th Cir. Jan. 18, 2013).

Here, the record establishes that Defendants exercised reasonable care to prevent and correct alleged harassment.  The Eleventh Circuit has consistently held that "where an employer promulgates a comprehensive anti-harassment policy" effectively communicated to employees and containing reasonable complaint procedures, "the burden on the prevention prong" of the first element has been satisfied.  *Minix v. Jeld-Wen, Inc.*, 237 Fed.Appx. 578, 584, 2007 WL 1828259 (11th Cir. Jun. 27, 2007)(citations omitted).

Navarro was made aware of the anti-harassment policy and knew what conduct it covered.[109] Navarro knew he could bring forth concerns under the policy, just as he eventually did - but only *after* his employment ended.[110]

**(b)      Navarro's unreasonable failure to use the anti-harassment policy.**

An employee's unreasonable failure to use the complaint procedure normally suffices to satisfy the burden under the second element of the *Faragher/Ellerth* affirmative defense.      *Ellerth*, 524 U.S. at 765, 118 S.Ct. at 2270.  "With that principle in mind," the Eleventh Circuit has "held that an employee unreasonably fails to take advantage" of complaint procedures if he does not "us[e] the procedures in place to *promptly report* any harassment." *Minix,* 237 Fed.Appx. at 586 (emphasis in original)(*citing Baldwin*, 480 F.3d at 1306).

Here, the anti-harassment policy specified that if an Associate "[is] uncomfortable for any reason in speaking with the offender, or if the offensive behavior continues," the Associate had a responsibility to report it.through one of the avenues listed in the policy.[111]  Language like this places "the harassed employee [ ] under a 'prompt reporting duty'" imposed by the policy and by the prophylactic rules the Supreme Court built into Title VII in the *Faragher* and *Ellerth* decisions. *Baldwin*, 480 F.3d at 1306-07.    Navarro's failure to do so bars his claims here.

**C.      NAVARRO'S NEGLIGENCE CLAIMS FAIL AS A MATTER OF LAW.**

Counts I and II of Navarro's Complaint are premised on the allegations of the "negligent supervision and negligent retention" of Joey Rodriguez.[112]   In particular, Navarro alleges that Rodriguez "sexually harass[ed] and assault[ed]" him and "touched [him] inappropriately and without

---

[109] Navarro Depo. (ECF No. 50-1), 87/25-89/12.

[110] Statement of Facts (ECF No. 57), ¶¶ 21-27; Navarro Depo. (ECF No. 50-1), 90/17-19, 91/11-16.

[111] Associate Handbook (ECF No. 54-9), page 3-6 of 6.

[112] Complaint (ECF No. 1), ¶¶ 1, 20.

his permission," and that David Losk, Carl Vanderwarker, and Joe Rey "saw what was happening."[113] Navarro alleges "they openly condoned a culture of sexual harassment and assault, lewd behavior, vulgarity, and racism."[114]

First things first.    Most of what Navarro alleges cannot be a legal basis for negligence claims.

To be sure, a common law cause of action for negligence can be based on negligent supervision or retention of an employee.    But under Florida law, the underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law.[115]    Florida law does not recognize a common law cause of action for negligent failure to maintain a workplace free of sexual harassment.[116]

The underlying wrong must be a common law tort.[117]    While Navarro's allegations of unwanted touchings by Rodriguez satisfy this requirement, the analysis does not end there, because:

> [o]nce liability began to be imposed on employers for acts of their employees outside the scope of employment, the courts were faced with the necessity of finding some rational basis for limiting the boundaries of that liability; otherwise, an employer would be an absolute guarantor and strictly liable for any acts committed by his employee against any person under any circumstances.    Such [condition] would be an intolerable and unfair burden upon employers.[118]

---

[113] Complaint (ECF No. 1), ¶¶ 20, 24.

[114] Complaint (ECF No. 1), ¶ 25.    Navarro alleges as an example that Rodriguez "would constantly talk about sex," "watch pornography on the showroom floor," and "make sexual gestures and noises." Complaint (ECF No. 1), ¶ 26.

[115] *Scelta v. Delicatessen Support Services, Inc.*, 57 F.Supp.2d 1327, 1348 (M.D. Fla. 1999).

[116] *See, e.g., Castleberry v. Edward M. Chadboure, Inc.*, 810 So.2d 1028, 1030-31 (Fla. 1st DCA 2002); *Vernon v. Medical Management Associates of Margate, Inc.*, 912 F.Supp. 1549, 1563 (S.D. Fla. 1996).

[117] *Gutman v. Quest Diagnostics Clinical Laboratories, Inc.*, 707 F.Supp.2d 1327, 1331-32 (S.D. Fla. 2010).

[118] *Garcia v. Duffy*, 492 So.2d 435, 439 (Fla. 2d DCA 1986).    It is undisputed that the conduct Navarro attributes to Rodriguez was outside the scope of Rodriguez's employment.    Complaint (ECF No. 1), ¶¶ 34, 44.

This species of negligence claim focuses "on an employer's failure to take post-employment action *where the employer knows* an employee is unfit."[119]   But as a matter of law, such a claim requires specific showings.   The inquiry in this case is "what exactly managers knew and when they knew it, the role and duties of any managers with knowledge, and the expected actions that knowledge should impel for someone in that role."[120]

There is no valid proof that the managers Navarro identifies were timely placed on notice of anything – whether through the means in place that Navarro failed to use, or otherwise.[121]   Navarro admits he never told Losk, Vanderwarker, or Rey that Rodriguez touched him improperly.[122]   None of them ever told *Navarro* that they had witnessed the touchings Navarro attributes to Rodriguez.[123]   Deposed, Navarro stated that he "did not recall" anyone seeing Rodriguez touch him improperly.[124]

Finally, Navarro was asked specifically to affirmatively identify any person who witnessed the touchings he attributes to Rodriguez or even identify those he simply *believed* witnessed those touchings.[125] In his response, Navarro stated only that he "believed" Losk had witnessed Rodriguez hugging Navarro, and did not specify *any instance* in which he was certain Losk, Vanderwarker or

---

[119] *Loos v. Club Paris, LLC*, 684 F.Supp.2d 1328, 1334 (M.D. Fla. 2010)(emphasis added).

[120] *McKenzie v. United States Tennis Association, Inc.*, 2024 WL 665102, *5 (M.D. Fla. Feb. 16, 2024).

[121] There were no witnesses to the first battery Navarro attributes to Rodriguez, and Navarro never brought it to the attention of anyone.   Navarro's duty to take steps to raise concerns the anti-harassment policy specifically directs him to raise creates other legal barriers to his claim, such as Florida's new comparative fault rules.   Fla. Stat. § 768.81(6).   And Navarro's own failure to mitigate harm.

[122] Statement of Facts (ECF No. 57), ¶¶ 20-22.

[123] Statement of Facts (ECF No. 57), ¶¶ 20-22.

[124] Navarro Depo. (ECF No. 50-1), 156/11-16.   Navarro indicated that "we were in the room and there was a few people in there [ ] so it's obvious everybody was seeing it."   Navarro Depo. (ECF No. 50-1), 156/11-16.   But one person's opinion as to what another person "obvious[ly]" witnessed is not competent evidence that anything was witnessed.

[125] First Interrogatories to Navarro (ECF No. 54-4), page 7.

Rey had witnessed any touchings.[126]  There is no competent evidence that Losk, Vanderwarker or Rey _ever_ witnessed the sexual touchings Navarro alleges.[127]

Navarro's negligence claims fail for this reason.

## IV.      CONCLUSION.

In the forty years since sexual harassment became a recognized basis for sex discrimination claims, courts have labored admirably and at length to develop workable standards to evaluate the conduct Navarro claims here.   Measured against those standards, Navarro's claims fail.

WHEREFORE, Defendants Hollywood Imports Limited, Inc., and AutoNation, Inc., request that the Court grant summary final judgment in their favor and against Plaintiff Juan Navarro, dismiss the claims in his Complaint with prejudice, and enter such other and further relief as the Court deems appropriate.

Respectfully submitted,

_Eric K. Gabrielle_
Eric K. Gabrielle (Florida Bar No. 160725)
Email:  egabrielle@stearnsweaver.com
**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
200 East Las Olas Boulevard – Suite 2100
Fort Lauderdale, Florida  33301
Telephone:  954-462-9527
Facsimile:  954-462-9567
_Attorneys for Defendants_

---

[126] Navarro's Response to First Interrogatories (ECF No. 54-4), pages 7-8.

[127] Losk Depo. (ECF No. 50-2), 49/15-17; Vanderwarker Depo. (ECF No. 50-3), 5-9; Rey Decl. (ECF No. 53-3/56-1), ¶ 4.