UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-61772-CIV-SMITH

JUAN NAVARRO,

    Plaintiff,
v.

HOLLYWOOD IMPORTS LIMITED, INC.,
and AUTONATION, INC.

    Defendant.
_____/

**DEFENDANTS' MOTION TO PRECLUDE OPINION TESTMONY
BY MICHAEL L. ELKINS AND SUPPORTING MEMORANDUM OF LAW**

Defendants Hollywood Imports Limited, Inc., and AutoNation, Inc., ("Defendants") through undersigned counsel, move: (a) pursuant to Federal Rule of Evidence 702, to preclude opinion testimony and evidence from Michael L. Elkins, Esq., an attorney designated to provide such testimony by Plaintiff Juan Navarro ("Navarro"); and (b) alternatively, pursuant to Federal Rules of Civil Procedure 26(a) and 26(e), to exclude opinion testimony and evidence premised on an Amended Report by Elkins that violates that rule.[1]

**I.    INTRODUCTION.**

There is a first time for everything. Including opinion testimony. But the strictures of Federal Rule of Civil Procedure 702 allow no rookie exceptions. A party proffering an opinion witness under Rule 702 must meet its standards, and the reports of the opinion witness must also comply with Rules 26(a) and 26(e).

---

[1] In support of this Motion, Defendants have previously filed the deposition transcripts of Elkins taken on April 29, 2024 (ECF No. 51-1) and July 9, 2024 (ECF No. 51-2) and certain exhibits (ECF No. 52-1 through ECF No. 52-5) referenced in those depositions.

## II.     RELEVANT BACKGROUND.

Mr. Elkins is a fine fellow and may be a fine lawyer as well, but he is new to all this. He has never been qualified as an expert by any court.[2] No court has ever made any adjudication regarding the admissibility of any substantive opinion he has offered or authored.[3]

To be fair, this case is also just the second time Elkins has even been engaged in that capacity.[4] The only other time was also by Navarro's counsel.[5] Of course, even the most versed and experienced experts once had to play that role for a first time.

But as the record below shows, for Elkins this case should not be it.

### A.     The Court's deadlines.

Expert deadlines matter. Early in this case, the Court established all pertinent pretrial deadlines.[6] Those deadlines included, as they always do, dates for the parties to meet pretrial obligations regarding expert witnesses.

Namely: (a) <u>April 1, 2024</u>, for Navarro to disclose experts, expert witness summaries and reports required by Fed. R. Civ. P. 26(a)(2); (b) <u>May 1, 2024</u>, for Defendants to make their Rule 26(a)(2) disclosures; (c) <u>May 31, 2024</u>, for the parties to exchange rebuttal expert witness summaries and reports; and (d) <u>June 28, 2024</u>, for the completion of expert discovery.

---

[2] Elkins Depo. (ECF No. 51-1), 36/14-16.

[3] Elkins Depo. (ECF No. 51-1), 11/9-24.

[4] Elkins Depo. (ECF No. 51-1), 13/8-13. Not including opining on reasonableness of attorney fees.

[5] Elkins Depo. (ECF No. 51-1), 13/2-13.

[6] *See* Order Setting Civil Trial Date, Pretrial Deadlines, and Referral to Magistrate Judge. (ECF No. 30).

### B. Relevant background.

Some context from the underlying case will help. Navarro was hired as a sales associate by a dealership known as Honda Hollywood effective March 23, 2022 and remained continuously employed there until his resignation thirteen months later. On April 6, 2023, Navarro resigned his employment, effective April 20, 2023.[7] That day, Navarro extended his departure date until the end of April 2023.[8]

Two weeks after Navarro's last day at the end of April 2023, on May 14, 2023, Navarro emailed a complaint regarding his former workplace to Cary Pacheco, a Human Resources manager responsible for the dealership where Navarro formerly worked.[9] Navarro claims he was sexually harassed by one manager at the dealership and three others were aware of it.[10]

### C. Navarro's Rule 26(a) disclosures.

On April 1, 2024, Navarro disclosed an "Expert Report," on time, from Elkins.[11] He was deposed April 29, 2024.[12] Based on Elkins' Report and that deposition, Defendants made no expert designation. This case proceeded apace.

Two months later, on Monday, July 1, 2024, Navarro disclosed an *Amended* Expert Report from Elkins dated Friday June 28, 2024.[13] Because the Amended Report was served when it

---

[7] *See* ECF No. 54-1.

[8] *See* ECF No. 54-17.

[9] *See* ECF No. 54-8.

[10] *See* ECF No. 54-8. The evidence does not support that. *See* ECF No. 58, *passim*. But that is not part of the analysis here.

[11] *See* ECF No. 52-2.

[12] *See* ECF No. 51-1; ECF No. 52-1.

was, the parties proposed an agreed extension of the expert discovery period so Elkins could be deposed.[14]   The Court approved an extension until July 12, 2024 so Elkins could be deposed on the Amended Report.[15]   Elkins was redeposed on July 9, 2024.[16]

The Amended Report supplemented Elkins' prior opinions based on discovery that had occurred since April 1, 2024, which is allowed by Rule 26(e).   But the Amended Report also contained something else that is not allowed:  *new* opinions that Elkins acknowledges did not appear in his original Report.

### 1. Elkins' original Report (ECF No. 52-2).

According to Elkins' original Report, he was engaged by Navarro's counsel to "[o]pine on the sufficiency of [the] investigation" Ms. Pacheco conducted into the email complaint Navarro sent her two weeks after his last day of employment.[17]   Elkins' conclusion was that "HR should have generated a complete and detailed report" regarding Navarro's May 14, 2023 email and that "Pacheco's investigation, if one was even done, was completely insufficient and far below HR best practices.[18]

According to the same original Report, Elkins was also engaged to opine on "whether the failure of management employees to report certain conduct violates HR best practices/standards

---

[13] *See* ECF No. 52-4.

[14] ECF No. 46.

[15] ECF No. 47.

[16] *See* ECF No. 51-2; ECF No. 52-3.

[17] *See* ECF No. 52-2, page 4 of 10.

[18] *See* ECF No. 52-2, page 6 of 10.   Elkins was able to reach this conclusion despite the fact that Pacheco had not yet been deposed in the case.

of care."[19]   Elkins concluded that Navarro's emailed complaint "implicitly alleges" that a "systemic culture" existed at the dealership and that if those allegations "are true, there are serious issues as to why the employees who witnessed the conduct, especially management employees, did not report it."[20]   Elkins also opined that Pacheco's supervisor "should have realized the deficiency of Pacheco's investigation" and was "deficient in the context of HR best practices."[21]

### 2. Elkins' Amended Report (ECF No. 52-4).

Elkins' Amended Report rewrites and broadens the scope of his opinion.  He removes some language that was the subject of examination in his earlier deposition.[22]

More significantly, Elkins added what he admits were *new* opinions, in the Amended Report issued at the close of the expert discovery period.   Elkins added new opinion that Human Resources did not adequately investigate complaints made by two other employees – Asim Faizan and Raynell Hodge.[23]   Elkins concluded that there was a "general failure of human resources to not conduct proper investigations that are within the standard of care," and that "HR was below

---

[19] *See* ECF No. 52-2, page 6 of 10.

[20] *See* ECF No. 52-2, page 6 of 10.  Elkins admitted that the phrase "systemic culture" is amorphous.  Elkins Depo. (ECF No. 51-1), 99/20-22.  When asked about the phrase "implicitly alleges," Elkins indicated his professional experience allows him to "read something like [Navarro's email complaint] and although the complainant doesn't specifically identify a culture," Elkins can "read the tea leaves on what he was alleging here, which was, impliedly, that the workplace allowed this to go on."  Elkins Depo. (ECF No. 51-1), 100/21-101/6.

[21] *See* ECF No. 52-2, page 7 of 10.

[22] For example, Elkins' Amended Report removed any reference to anything being "implicitly alleged," thereby presumably obviating any further need to "read the tea leaves" to interpret what Navarro "implicitly" meant to communicate in his May 14, 2023 email.

[23] *See* Elkins Depo. (ECF No. 51-2), 226/7-229/9.

the standard of care generally.[24]  According to Elkins, this new opinion reflected in his Amended Report includes his conclusion is that there is a pattern of inadequate investigations by Ms. Pacheco.[25]

### III. LEGAL ARGUMENT.

"A party [ ] cannot disclose an expert report with new theories or opinions in the name of "supplementation" under Rule 26(e)."   *In re 3M Combat Arms Earplug Products Liability Litigation*, 2021 WL 763778, *2 (N.D. Fla. Jan. 15, 2021); *Brucker v. Lowe's Home Centers, Inc.*, 2012 WL 2225818, *2 (M.D. Fla. Jun. 15, 2012)(collecting cases).

Rule 26(e) permits supplemental reports only "for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report."  *Boca Raton Community Hosp., Inc. v. Tenet Healthcare Corp.*, 2006 WL 5309506, *2 (S.D. Fla. Oct. 18, 2006).    "A revised report which includes a new theory or opinion is not proper supplementation under Rule 26(e).   *Brucker*, 2012 WL 22258818, *2.

There is no dispute that Elkins Amended Report contains new opinions – he admitted exactly that.  Elkins acknowledged that his Amended Report (dated June 28, 2024) included *new* opinions not previously contained in his original Report.[26]  Among others, Elkins added new opinions regarding what he summarized in deposition as a "pattern" of "substandard

---

[24] Elkins Depo. (ECF No. 51-2), 230/21-231/13, 234/23-236/10.  The Amended Report also contains a section on an individual named Carlos Alcaraz.  ECF No. 52-4, page 6 of 12.  Elkins admits that nothing having anything to do with this individual was necessary to support any of the opinions he is offering in the Navarro case and Elkins has formed no opinions regarding him.  Elkins Depo. (ECF No. 51-2), 240/7-244/23.

[25] Elkins Depo. (ECF No. 51-2), 354/2-355/21.

[26] *See* ECF No. 51-2, 236/9-13.

investigations" he claims to have discerned from his review of Defendants' Human Resources practices.

For the reasons explained below, opinion testimony from Elkins is inadmissible under Federal Rule of Evidence 702 and barred as such.  But in any event, testimony and evidence as to the new opinions in the Amended Report must be precluded

What Navarro proffers from Elkins is not opinion testimony that meets the threshold standard of Rule 702.   Elkins' opinion lacks any coherent methodology and is ungrounded in and unbounded by any set of standards, guidelines, or reference points beyond Elkins' own "ipse dixit."

While premised on his experience, Elkins lacks defined credentials that permit that experience to be measured.   For these reasons, Navarro cannot establish a foundation for the admissibility of Elkins testimony under Rule 702.  The now-familiar analysis to be made under Rule 702 requires district courts to engage in a rigorous three-part inquiry to determine whether:

(1) Elkins is qualified to testify competently regarding the matters he intends to address;

(2) the methodology by which Elkins reached his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and

(3) Elkins testimony will assist the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue. *Professional Tank Cleaning, Inc. v. JAG Industrial Services, Inc.*, 2020 WL 13614901, *3 (S.D. Fla. Jun. 5, 2020).  The proffered opinion testimony from Elkins meets none of these criteria.

### A.     Elkins is not qualified to testify.

No one suggests that Elkins is not a qualified attorney.  But the analysis here must be more focused.   Elkins uses various phrases to describe the standard he views himself to be applying in this opinion:   "industry standards," "HR best practices," "industry standard of care," "reasonable HR practices," and "reasonable standard of care."[27]   According to Elkins, these all mean the same thing.[28]

Very well.   But to Elkins, these are not third party standard, guidelines, or rules he is applying to the matter before him.  Instead, it is Elkins' professional experience, *and nothing else*, that he applied to determine what "industry standards" and "best practices" are.[29]   Elkins made use of no standards or guidelines of any kind in reaching his opinion.[30]   None issued by any third party, nor any published or unpublished standards from any legal authorities, nor any published monographs, treatises, manuals, articles, textbooks or other documents concerning any of the topics of his opinion.[31]

Elkins has been practicing law for 23 years, but lacks any other identifiable objective credentials specific to the opinions Navarro proffers from him regarding human resource investigations.   Elkins is not board certified by the Florida Bar in labor and employment law.[32]

---

[27] Elkins Depo. (ECF No. 51-2), 294/5-296/10.

[28] Elkins Depo. (ECF No. 51-2), 296/4-10.

[29] Elkins Depo. (ECF No. 51-1), 37/16-38/15.

[30] Elkins Depo. (ECF No. 51-1), 14/12-15, 22/15-18; Elkins Depo. (ECF No. 51-2), 187/21-15.

[31] Elkins Depo. (ECF No. 51-1), 14/12-15; Elkins Depo. (ECF No. 51-2), 170/18-172/23, 187/22-25.

[32] Elkins Depo. (ECF No. 51-1), 76/5-7.

He has never been deemed a subject matter expert by the Equal Employment Opportunity Commission authorized to provide training pursuant to a consent decree.[33]

Elkins has no formal training in Human Resources.[34] He holds no certification or credential as an investigator.[35] As far as Elkins knows, no court has ever adjudicated the sufficiency of any investigation Elkins himself conducted.[36] Nor is he aware of any specific standard for what a record of an investigation should look like.[37]

### B. Elkins' opinions involve no application of methodology, principles or methods.

Perhaps most tellingly, Elkins candidly admits he is not really sure how someone else could measure or evaluate his own professional experience.[38] Elkins has no idea how his conclusions could be tested or examined.[39] Indeed, Elkins was not even sure how the term "methodology" would even apply to his opinions:

> Q: What methodology did you apply to reach the opinion you offer in this case?
>
> A: Could you be a little bit clearer about what you mean by "methodology?"
>
> Q: Well, I'm asking you what methodology you used to reach your expert opinion.

---

[33] Elkins Depo. (ECF No. 51-1), 76/11-77/4.

[34] Elkins Depo. (ECF No. 51-1), 75/4-5. Elkins could not identify any specific certifications available to Human Resources professionals. Elkins Depo. (ECF No. 51-1), 75/10-76/1.

[35] Elkins Depo. (ECF No. 51-1), 75/10-76/1.

[36] Elkins Depo. (ECF No. 51-1), 24/14-17, 32/14-33/3, 97/12-22.

[37] Elkins Depo. (ECF No. 51-1), 78/19-24.

[38] Elkins Depo. (ECF No. 51-1), 74/15-18.

[39] Elkins Depo. (ECF No. 51-1), 34/2-8, 36/18-37/2, 96/13-97/11.

> A: I'm a little unclear what you mean by "methodology," but I will attempt to answer. I've been an attorney for approximately 23 years, primarily, for the entirety of my career, a labor and employment management attorney for the entirety of my 23 years. I would say that 95 percent of my practice is labor and employment law, and that of that 95 percent, 93 percent is management defense. So based on my years of experience in that field, including my individual experience investigating workplace allegations, both as an attorney representing clients as well as an individual hired as an outside third-party investigator, that experience, knowledge base, was what I used to render my opinion in this case.[40]

The admission of expert evidence is governed by Federal Rule of Evidence 702, as explained by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005); *Professional Tank Cleaning, Inc. v. JAG Industrial Services, Inc.*, 2020 WL 13614901, *3 (S.D. Fla. Jun. 5, 2020).

Rule 702 provides that: "[a] witness [ ] qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

Part of this is new: Rule 702 was amended effective December 1, 2023.[41] The rule was amended specifically to "clarify and emphasize that expert testimony many not be admitted" unless its proponent "demonstrates to the court that it is more likely than not that the proffered testimony

---

[40] Elkins Depo. (ECF No. 51-1), 21/20-22/14.

[41] *See United States v. Smith*, 2024 WL 3067174, *9 (10th Cir. Jun. 20, 2024).

meets the admissibility requirements" of the Rule.[42] The rule was also amended "to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology."[43]

To be sure, an expert may be qualified on the basis of experience alone. However, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[44]

The Court's "gatekeeping function requires more than simply 'taking the expert's word for it.'" [45]  Neither *Daubert* nor Rule 702 requires a trial judge to admit opinion evidence that is connected to existing data "only by the *ipse dixit* of the expert." *Professional Tank Cleaning, Inc. v. JAG Industrial Services, Inc.*, 2020 WL 13614901,*4 (S.D. Fla. Jun. 5, 2020).

### C. There is no benefit to the jury here.

"Expert testimony 'generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.'" *Harris v. Hixon*, 203 F.4th 1120, 1132 (11th Cir. 2024)(*quoting U.S. v. Frazier*, 387 F.3d 1244, at 1262-63(11th Cir. 2004)).

Thus, "[j]udicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether

---

[42] *See* Advisory Committee Notes to 2023 Amendments.

[43] *See* Advisory Committee Notes to 2023 Amendments.

[44] Advisory Committee Note to 2000 Amendment to Rule 702.

[45] Advisory Committee Note to 2000 Amendment to Rule 702.

the conclusion of an expert go beyond what the expert's basis and methodology may reliably support."[46]

The Rule 702 analysis, which must be made in conjunction with Rule 104(a), does not require the Court to "nitpick an experts opinion" and does not "require perfection," but the gatekeeping function of the Court's analysis "does not permit the expert to make claims that are unsupported by the expert's basis and methodology."[47]

## IV. CONCLUSION.

An opinion reached without discernable methodology, unmoored in any set of articulable principles, based on experience that – however hard-won – cannot be defined by any objective credential, is not opinion evidence under Rule 702, and its proponent is not a qualified expert, just another lawyer in the courtroom with an opinion.

WHEREFORE, Defendants Hollywood Imports Limited, Inc., and AutoNation, Inc. request that the Court preclude testimony and evidence from Michael L. Elkins or alternatively preclude such testimony and evidence based on the new and untimely disclosed opinions in his Amended Report.

Respectfully submitted,

*Eric K. Gabrielle*
Eric K. Gabrielle (Florida Bar No. 160725)
Email: egabrielle@stearnsweaver.com
**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
200 East Las Olas Boulevard – Suite 2100
Fort Lauderdale, Florida  33301
Telephone:  954-462-9527
Facsimile:  954-462-9567
*Attorneys for Defendants*

---

[46] *See* Advisory Committee Notes to 2023 Amendments.

[47] *See* Advisory Committee Notes to 2023 Amendments.