UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

JUAN NAVARRO, an individual,

        *Plaintiff,*                             **CASE NO.: 0:23-cv-61772-RS**

v.

HOLLYWOOD IMPORTS LIMITED, INC.
d/b/a AUTONATION HONDA HOLLYWOOD,
a Florida Corporation; and AUTONATION, INC.,
a Delaware Corporation,

        *Defendants.*
_____/

**PLAINTIFF'S VERIFIED MOTION FOR ATTORNEY'S FEES**

Plaintiff Juan Navarro (the "Plaintiff") pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54(d)(1), and S.D. Fla. Local Rule 7.3, moves this Court for the entry of an order awarding attorneys fees against Defendants Hollywood Imports Limited, Inc. and AutoNation, Inc. ("Defendants").

    **I.**     **Introduction & Relevant Background**

Juan Navarro worked at AutoNation selling cars. By all accounts, he was good at his job. The problem: Juan's supervisor Joey Rodriguez sexually harassed and sexually assaulted him. But by virtue of either friends or family, Joey was untouchable. Being sexually harassed and assaulted at work took a psychological toll on Juan and began hurting his marriage. So he quit.

Many lawyers who represent employees in discrimination matters do not actually litigate cases. They operate settlement practices. *See* Declaration of Jonathan Pollard, attached hereto as Exhibit "A" (addressing many of the facts laid out below). Many clients in Florida are unable to find a lawyer who is willing to represent them in filing an employment discrimination case on their behalf on a contingency fee basis. In that same direction, many lawyers that file employment

1

discrimination cases often are unwilling to take those cases through summary judgment. That is because of the cost (time and money) and the risk. Trial courts in the 11th Circuit routinely grant summary judgment in employment discrimination cases, even when doing so contravenes Rule 56. *See, e.g., Tynes v. Florida Dept. of Juvenile Justice*, 88 F. 4th 939, 947 (11th Cir. 2023). In employment discrimination cases, summary judgment is improperly granted far more often than the appellate case law reflects. That is because the plaintiffs in these cases rarely pursue an appeal. That is the economic reality. The tide has begun changing. *Id*.; *see also Muldrow v. City of St. Louis,* No 22-193, 601 U.S. 346 (2024). But it is still tough sledding in the trial courts. As a result, very few lawyers are willing to pursue employment discrimination cases like this case on a contingency fee basis and aggressively litigate those cases through the summary judgment stage.

In the eyes of both the defense bar and the plaintiff's bar, Navarro's case was not particularly attractive. On both sides of the bar, it is widely believed that folks who quit a job (rather than get fired) do not have a strong case. It is widely believed that the only "real" damages in these cases are lost wages. And many lawyers are not willing to represent men who have been the victims of sexual harassment and sexual assault because of either personal or societal biases. Perhaps it was for those reasons that Mr. Navarro struggled to obtain counsel. Mr. Navarro called multiple law firms before contacting Pollard PLLC. None of those firms would take his case. And one firm stated they were not comfortable pursuing a case against AutoNation. During this litigation, at least three other lawyers expressed their opinion of adult male plaintiffs in sexual assault cases to the undersigned counsel as follows: A jury will never believe that a grown man can be a victim in that sort of case. But the undersigned counsel was undaunted. Navarro has rights. Those rights were violated. And those rights needed to be vindicated.

Pollard PLLC sent AutoNation a pre-suit demand letter. AutoNation ignored it. After going through the EEOC process, Pollard PLLC filed this action. Shortly thereafter, Pollard PLLC learned that – unbeknownst to them – Mr. Navarro had declared bankruptcy. This would have resulted in Navarro losing his claims and likely receiving nothing. In the knowledge that they could obtain a substantial recovery for Navarro, Pollard PLLC coordinated with Navarro's bankruptcy lawyer for Navarro's bankruptcy filing to be withdrawn.

AutoNation is represented in this matter by the experienced and capable Eric Gabrielle of Stearns Weaver Miller Weissler Alhadeff & Sitterson. During discovery, Mr. Gabrielle had a call with Mr. Prater wherein Mr. Gabrielle stated that AutoNation's strategy was to wear the undersigned counsel down through aggressive litigation. *See* Declaration of Christopher Prater, attached hereto as Exhibit "B".

In a subsequent phone call between Mr. Pollard and Mr. Gabrielle, Mr. Pollard brought up AutoNation's aggressive litigation strategy. Mr. Gabrielle was, likewise, candid with the undersigned about his client's litigation strategy. Mr. Gabrielle admitted that AutoNation was attempting to overwhelm Plaintiff's counsel and to make the case require so much time and effort that Plaintiff's counsel would give up (as Pollard PLLC had taken the case on a contingency fee basis) and settle for something cheap. Mr. Gabrielle expressed his surprise and said something to the effect that Pollard PLLC was treating the case like a billable case. Per Mr. Gabrielle, this was highly unusual.

As Mr. Pollard explained during his call with Mr. Gabrielle, Pollard PLLC is not a typical plaintiff-side employment firm. The Firm has spent the past decade defending high-stakes non-compete and trade secret cases, often with many millions of dollars at issue. Up until 2022, the vast majority of the Firm's work was billable hourly (up to Mr. Pollard's then-rate of $700 to $800

per hour depending on the matter). In 2023, the Firm moved away from billable hours and stopped accepting billable hourly cases. Since then, Pollard PLLC has litigated high stakes cases on a flat fee basis and discrimination or civil rights cases on a pure contingency fee. As a point of reference, many firms in the market – including Stearns Weaver – now utilize alternative fee arrangements.

There are many folks like Navarro who have real cases. But they cannot find lawyers to represent them. Because they don't have any money and lawyers are expensive. In pursuing this matter on a pure contingency fee, Pollard PLLC took a tremendous risk. They accepted Navarro's case for litigation and agreed to do all the work and advance all of the hard costs without any compensation unless and until they won. Pollard PLLC is a small, 4-lawyer shop. Accepting this case precluded the Firm from accepting numerous other matters at the same time (particularly in light of Defense counsel's strategy of attempting to overwhelm Plaintiff's counsel and make the case too much work). AutoNation served aggressive paper discovery in numerous rounds. There were ten depositions of eight deponents (two individuals were deposed twice). AutoNation improperly withheld critical evidence during discovery. Pollard PLLC was forced to compel those documents.

Even after AutoNation agreed to settle this matter, they had one more trick up their sleeves. As part of negotiating the actual settlement agreement, AutoNation insisted that Mr. Pollard personally agree never to say anything about this case. To be clear: AutoNation did not just want Mr. Pollard obligated to keep the settlement sum confidential (which is entirely proper). Instead, AutoNation wanted Mr. Pollard prohibited from ever mentioning the case publicly. AutoNation is a big company. Pollard PLLC has represented former AutoNation employees in litigation before. Preventing Mr. Pollard from ever talking about this case publicly would help prevent other employees with similar cases against AutoNation from finding Pollard PLLC and obtaining

competent counsel. Mr. Pollard refused AutoNation's demands. But the settlement agreement was finalized. The case has been resolved. All that is left is the attorneys' fees and costs.

Pollard PLLC has conferred with counsel for AutoNation and attempted to settle the fees. As of this filing, AutoNation's lone offer to settle the fees is $80,000 with the amount subject to confidentiality restrictions. AutoNation has no right to secrecy. Pollard PLLC would have settled the attorneys' fees on reasonable terms. But the Firm will never agree to a confidential settlement of the attorneys' fees, which would no doubt come with a gag order attached. Simply put: There is no price AutoNation could pay Mr. Pollard to buy his silence and chill his advocacy.

### II.     Information Provided Pursuant to Rule 7.3

As fully detailed below, Pollard PLLC seeks an award of $ $259,591.50 in attorneys' fees for 444.81 hours of time. This amount does not fully reflect all the time spent on phone calls, travel time, quick emails, and the like. But the Firm would never fully capture all that time anyway because the Firm does not charge clients attorneys' fees for travel time and the Firm is not built to capture every possible billable hour. That is just reality. Under the Engagement Letter with the Plaintiff, Pollard PLLC took this case on a pure contingency fee and agreed that hourly fees could be awarded by the Court if Plaintiff prevailed in the litigation. Defendant has agreed that Plaintiff is to be treated as the prevailing party for purposes of a fee award and further agreed that Pollard PLLC is entitled to an attorneys' fee award. Fees may be awarded in this matter pursuant to both Title VII and the FCRA.

### III.    Legal Argument

AutoNation has stipulated that Mr. Navarro is entitled to a fee award in this case as if he were the prevailing party for purposes of attorneys' fees.

5

**A. Pollard PLLC's Hourly Rates and Hours Expended Are Reasonable**

The Lodestar framework controls. The first piece of the Lodestar analysis involves establishing a reasonable hourly rate. In evaluating a reasonable hourly rate, the Eleventh Circuit has approved of courts using the *Johnson* factors. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *see also Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*.

Pollard PLLC had no prior relationship with Navarro. Cases involving male-on-male sexual harassment and sexual assault in the workplace are relatively rare. That owes, in part, to societal biases and prejudices suggesting that men cannot be victims of sexual harassment or sexual assault. Or that men are not "sympathetic" plaintiffs in these types of cases. Navarro quit his job at AutoNation and did not have a particularly significant amount of lost wages or economic damages. In the Florida federal courts, hostile work environment claims rarely survive summary judgment. Mr. Navarro was in bankruptcy early in the case. Other lawyers and law firms turned the case down. At least one of those firms was unwilling to pursue a case against AutoNation. Pollard PLLC took the case on a pure contingency fee. The Firm did all the work for free and advanced all of the costs out of pocket. Pollard PLLC obtained a meaningful recovery for its client in a case where AutoNation maintained that the Plaintiff had no real damages. Pollard PLLC's pursuit of this case precluded the Firm from accepting other matters that would have paid much

more. Pollard PLLC has a long track-record of high-quality advocacy in this and other Florida federal and appellate courts. All of these considerations made the case not an attractive or desirable contingency fee case from an economic or business standpoint. But Pollard PLLC took the case on a pure contingency fee. Pollard PLLC is a small, 4-lawyer firm. The case required a significant investment of the Firm's time and resources. Against that backdrop, Pollard PLLC's requested rates are substantial but reasonable.

Jonathan Pollard seeks a rate of $800/hr for 56.5 hours. Mr. Pollard began his career in 2009 at Boies, Schiller & Flexner where he was billed out at nearly $400/hr from his first day at BSF. Mr. Pollard was at BSF for not quite 3 years. He left to start his own firm in March of 2012. By the time Mr. Pollard left BSF, his time was being billed at $550 an hour. See, e.g., *Anwar v. Fairfield Greenwich Ltd.*, Civ. 118 (VM) (SDNY) (D.E. 1561) (reflecting request for $550 per hour for Mr. Pollard's time on the case as part of a fee petition that was ultimately granted). Since establishing his own firm in 2012, Mr. Pollard has been counsel of record in more than 130 litigation and appellate matters (and more if counting arbitrations). *See* Pollard Declaration. Mr. Pollard has been lead counsel in a jury trial, a bench trial, and a final AAA arbitration. Mr. Pollard has won numerous appeals in the United States Court of Appeals for the 11th Circuit and the Florida District Courts of Appeal. Most of these cases have arisen out of the employment context. Before abandoning the billable-hour model approximately two years ago in favor of flat-fee billing, Mr. Pollard had billable hourly cases where his rate was between $700 and $800 per hour. That was for paying clients. Finally, Mr. Pollard and his firm are efficient.  Mr. Pollard oversees more than 20 active litigation cases at any given time and 40 prelitigation matters. His role in active litigation tends to be strategy, analysis, and stepping in for key parts of the case where his expertise is most valuable. He does not staff himself on cases in a way that would be most advantageous from a

billable hour perspective. His goal is to do the work and get the results – not to bill hours. Mr. Pollard is only seeking 56.5 hours of time on this case. The undersigned submits that a rate of $800 is reasonable for Mr. Pollard's time.

Christopher Prater seeks a rate of $600/hr for 255.3 hours. Mr. Prater has practiced law since 2013. *See* Prater Declaration. Mr. Prater is Mr. Pollard's law partner and has been with Pollard PLLC for more than 9 years. Mr. Prater has been substantially involved in every case Pollard PLLC has litigated or arbitrated for the past 9+ years. Mr. Prater has served as counsel of record in nearly 100 litigation and appellate matters. Mr. Prater was responsible for all of the discovery, conducted all of the depositions in this matter, and handled the day-to-day administration of the case. Prior to joining Pollard PLLC, Mr. Prater practiced high-stakes medical malpractice with Needle & Ellenberg. During law school, he was a law clerk at Podhurst Orsek. The undersigned submits that a rate of $600 per hour is reasonable for Mr. Prater's time.

Deaken Shuler seeks a rate of $500/hr for 105.1 hours. Mr. Shuler became a licensed attorney in 2023. But Mr. Shuler is not the typical newly-minted attorney. Mr. Shuler graduated law school and passed the bar in 2015. He has worked with Mr. Pollard and Mr. Prater for more than 9 years, primarily in a role of writing and analysis. *See* Exhibit C - Shuler Declaration. Mr. Shuler leads the Firm's St. Louis, Missouri office and heads up the Firm's litigation in the midwest. Since his admission, Mr. Shuler has served as counsel in complex, high-stakes employment, non-compete, trade secret, and fiduciary duty litigation and arbitration. In some of these cases, Mr. Shuler has run the entire case himself from inception through resolution. Mr. Shuler writes many of the Firm's appellate briefs and shared the summary judgment briefing in this case with Mr. Pollard and Mr. Prater. From a billable-hour standpoint, that is far more cost-effective than having Mr. Pollard do all of the summary judgment briefing himself at the highest rate. So there should

be a cost savings reflected there. But the Firm should not be punished and locked into rigid guidelines. Mr. Shuler's value should not be based purely his years as a licensed attorney. Mr. Shuler is more akin to a 10th year attorney than a 2nd year attorney. Prior to joining Pollard PLLC, Mr. Shuler was also a law clerk at Podhurst Orsek. The undersigned submits that a rate of $500/hr is reasonable.

Michael Boehringer seeks a rate of $400/hr for 17.9 hours. Mr. Boehringer was admitted to practice law in 2019 and has been with Pollard PLLC for more than 4 and ½ years. Mr. Boehringer routinely takes the lead in day-to-day litigation of numerous plaintiff-side employment cases and routinely interfaces with senior partners on the other side of those cases. As Mr. Prater took the lead on this case, Mr. Boehringer did spot duty and pitched in as necessary on major projects and discovery. The undersigned submits that a rate of $400/hr is reasonable.

Beatriz Reyes is a Florida Registered Paralegal. Pollard PLLC seeks a rate of $150/hr for 10.01 hours. Ms. Reyes has more than 12 years of experience in employment litigation, including plaintiff-side employment litigation and class actions. Ms. Reyes has additional law firm operations experience beyond her experience as a paralegal. The undersigned submits that $150/hr is reasonable.

Finally, in considering the reasonableness of Pollard PLLC's fees in this matter, the Court might ask AutoNation's counsel what he was paid for this litigation. As noted, Mr. Gabrielle has a long-standing relationship with AutoNation and has served as their litigation counsel in numerous cases. He gives AutoNation what essentially amounts to most-favored nation status with respect to rates. Mr. Gabrielle and his firm were paid contemporaneously for their services. A guaranteed fee that a long-standing, well-capitalized corporate client pays to its long-term outside counsel

9

should be significantly lower than the fee that is ultimately paid to a law firm that represents an unknown client on a contingency fee in a case of this nature.

### B. Pollard PLLC Does Not Request a Fee Enhancement Because the Law is Clearly Against It

Pollard PLLC does not request a fee enhancement because the case law is clear. *See Perdue v. Kenny A.*, 559 U.S. 542 (2010). The undersigned will not waste the Court's time tilting at windmills. But the undersigned simply will note that the logic of Alabama federal courts from nearly 40 years ago still holds true today:

> [A]ttorneys in the state are unwilling to undertake employment discrimination cases on a contingency basis because, in large part, they believe the cases are uneconomical; the fees they receive when successful are not high enough to justify taking the risk of losing such cases, especially since there is plenty of other more stable and profitable work available. In fact, a substantial percentage of the lawyers that handled contingency fee employment discrimination cases in the past have stopped doing so for this reason; moreover, the evidence shows that very few, if any, young lawyers in the state are going into the practice of civil rights and employment discrimination law because it is so uneconomical. As a result, there is a severe and critical shortage of lawyers regularly willing to handle employment discrimination cases on a contingency basis in this state; and those who are alleged victims of employment discrimination but who cannot afford to pay the costs and fees of litigation are, therefore, finding it increasingly more difficult to find counsel.

*Stokes v. City of Montgomery, Ala.*, 706 F. Supp. 811, 817 (M.D. Ala. 1988) (awarding a fee multiplier to incentivize competent representation in civil rights cases), aff'd, 891 F.2d 905 (11th Cir. 1989). That logic applies here and now. Pollard PLLC litigates high-stakes non-compete and trade secret cases where they make far more money than they make on civil rights cases. Over the past few years, the Firm has litigated numerous high stakes cases exclusively on a flat fee arrangement (fee per phase of the case or per month; no billable hours). In those cases, the Firm routinely charges between $300,000 and $500,000 to take the case from inception through the date that summary judgment is filed.

Also, the Firm currently has 3 employment discrimination cases up on appeal in the 11th Circuit. All of them on a pure contingency fee. All of them that required a tremendous outlay of money (for attorney time and hard costs). Few if any law firms do that. Because it is not economically viable. Pollard PLLC does it on principle. Cases like Navarro's are not attractive from a business standpoint. Especially when up against a large company that utilizes aggressive litigation tactics to drive up the time and cost of litigation (because litigation is never free). Lodestar may theorize that other lawyers would have litigated this case for typical Lodestar rates and obtained a comparable result. But that is not the reality. Navarro contacted multiple other firms, and nobody would take his case. One firm had qualms about litigating against AutoNation, for whatever reason. Perhaps that was a real conflict of interest or just a desire to avoid getting on AutoNation's bad side. The reality is exactly what the *Stokes* court over in Alabama stated nearly four decades ago. Folks have a hard time finding capable counsel who are willing to litigate employment discrimination cases and go the distance on a contingency fee. If the federal courts do not take steps to ensure that this type of work is fairly compensated based on market realities, then few lawyers will represent people like Navarro in these sorts of cases.

Dated: March 7th, 2025

Respectfully submitted,

By: */s/ Jonathan Pollard*

Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com

Michael A. Boehringer
Florida Bar No.:1018486
mboehringer@pollardllc.com

>**Pollard PLLC**
>401 E. Las Olas Blvd., #1400
>Fort Lauderdale, FL 33301
>Telephone: 954-332-2380
>Facsimile: 866-594-5731
>*Attorneys for Plaintiff*

## VERIFICATION

I, Jonathan Pollard, confirm that the foregoing is true and correct under the penalty of perjury.

*/s/ Jonathan Pollard*

## LOCAL RULE 7.1(a)(3) CERTIFICATION

**I HEREBY CERTIFY** that, pursuant to Local Rule 7.1(a)(3) and 7.3 counsel for the movant conferred with counsel for Defendant via both email and telephone between February 6th, 2025 and March 3rd, 2025. Defendant opposes the relief requested.

*/s/ Jonathan Pollard*