**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

JUAN NAVARRO,

    *Plaintiff,*

v.

CASE NO.: 0:23-cv-61772-RS

HOLLYWOOD IMPORTS LIMITED, INC.,
d/b/a AUTONATION HONDA HOLLYWOOD;
and AUTONATION, INC.,

    *Defendants.*

_____/

## DECLARATION OF JONATHAN POLLARD

I, Jonathan Pollard, declare as follows:

1. If called as a witness, I would testify to the following facts based on my personal knowledge.

2. Along with my colleagues, I served as litigation counsel in this matter.

3. I submit this declaration in connection with our Verified Motion for Attorneys' Fees.

4. I started my career in law at Boies, Schiller & Flexner. During my time at Boies, Schiller & Flexner, I worked primarily on a large securities fraud class action arising out of the Madoff Ponzi scheme, on the Lehman Brothers vs. Barclays litigation, and on various high stakes antitrust matters.

5. When I left BSF, my time was being billed out at more than $500 an hour. That was 13 years ago.

6. A fee petition subsequently filed in the Southern District of New York (after I had left the firm) sought and obtained $550 an hour for my time.

7. I started Pollard PLLC in March of 2012. At the end of this declaration, please find a list of some representative matters that I have handled over the past thirteen years. Since starting the Firm, I have been counsel in more than 130 litigation and appellate matters (more counting arbitration). Many of those cases have been complex, high stakes matters.

1

8. In 2023, I stopped accepting matters on a billable hourly basis. In my view, hourly billing rewards inefficiency and punishes smart, effective lawyers. Hourly billing especially punishes smaller law firms. We're too lean. When we stopped billing hourly 2023, my hourly rate was between $700 and $800 an hour depending on the matter.

9. Since 2023, for cases that are paid work (as opposed to contingency fee work), we only operate on a flat or fixed fee basis. There is a fee per phase of the case or per month. We have cases on various arrangements. Some of those cases are $50,000 a month through pre-trial. Others are between $300,000 and $500,000 through summary judgment with an additional fee schedule for pre-trial and trial.

10. We do not accept hourly cases. We routinely reject hourly cases because they are not attractive business for a small, efficient law firm.

11. With respect to our contingency fee cases, we are willing to litigate cases that many other Florida lawyers are not willing to litigate.

12. We receive hundreds of calls and inquiries each week from people who are seeking a lawyer in an employment discrimination case.

13. Most of those people are unable to find a lawyer to represent them.

14. Many of those people report that other lawyers and law firms are only willing to represent them in the EEOC process and not willing to file a lawsuit because the risk of summary judgment is so high.

15. Mr. Navarro contacted me after contacting multiple other lawyers and law firms.

16. At least one lawyer turned the case away because he was not comfortable pursuing litigation against AutoNation.

17. I am friends and colleagues with many other lawyers, including some lawyers who represent employees in these types of cases.

18. Multiple lawyers stated to me that Mr. Navarro's case was not a strong case because a jury would not believe that a grown man could be sexually harassed and sexually assaulted.

19. I took Mr. Navarro's case anyway. I took his case in spite of the difficult landscape (that the 11th Circuit has attempted to correct in *Tynes* and similar cases).

20. I took Mr. Navarro's case in spite of the fact that many people believe that men cannot be the victim of sexual harassment or sexual assault.

Docusign Envelope ID: 34B31932-BC6F-442A-8299-403A5EB5E65B

21. I find that way of thinking reprehensible. Mr. Navarro is a human being. He has rights. And his rights were violated. That is why I took his case.

22. Early in the case, we learned that Mr. Navarro had filed for bankruptcy without us knowing. We worked with Mr. Navarro's bankruptcy counsel to withdraw the bankruptcy filing because we believed in him and his case.

23. On or around October 11, 2024, I spoke with AutoNation's counsel Eric Gabrielle on the phone. During this call, Mr. Gabrielle and I had a wide-ranging discussion about the litigation. I told Mr. Gabrielle that I understood from my partner Chris that AutoNation's strategy in the litigation was to wear us down and make us do lots of work because we were in the case on a contingency fee basis. Mr. Gabrielle admitted that this was his and AutoNation's strategy. That the plan was to overwhelm us and that most plaintiff-side employment lawyers simply were not willing to do this amount of work. Mr. Gabrielle made a comment to the effect that we had treated this case like it was a billable case. I explained to Mr. Gabrielle that we are not typical plaintiff-side employment lawyers and that most of our work has been defending high-stakes non-compete and trade secret cases.

24. Ultimately, I bear the complete risk of loss in these cases. I am willing to litigate these cases and take them to trial unless I obtain a meaningful recovery for my clients via settlement.

25. When we lose these cases at summary judgment, we appeal. Right now, we have three appeals pending in the 11th Circuit arising from the grant of summary judgment. We handle our own appeals and I – Jonathan Pollard – pay for all of that.

26. When we lose a case like this, we sometimes have corporate Defendants threaten to garnish our clients' wages over a cost judgment. And we won't let that happen, so we have to do even more work to stay a judgment. If we can't get a judgment stayed, I am willing to come out of pocket to pay for a bond to stay execution of the judgment so my poor and working-class clients don't have their modest wages garnished.

27. I do not staff cases with the goal of maximizing billable hourly revenue. I don't bill hours. I don't care about any of that. I staff cases with the goal of doing good work, getting the work done, and winning the case.

28. At any given time, I oversee 20 or more litigation cases and another 40+ pre-suit cases. My work on matters like this one is generally focused on case strategy, analysis, higher-level motion practice, trial preparation, and trial (if the case goes to trial). I do not handle the day-to-day work

on a case. My colleagues do that. With respect to significant motion practice, I allocate much of that to my other colleague Deaken Shuler, who is outstanding at writing and analysis. I do that without regard to billable hours and hourly rates.

29. This case was aggressively litigated. There were 10 depositions. We had to file a motion to compel, which we won, because AutoNation was withholding key evidence. We briefed and overcame summary judgment. Now, we have to litigate the issue of fees.

30. In our paying cases where we do this amount of work, we would have earned at least $400,000 for our efforts.

31. Here, we are requesting $259,591.50. Given all of the risks in taking a case like this, a fee award of approximately $260,000 creates no meaningful incentive for successful, highly-skilled lawyers to take cases like this. But that is what I am comfortable seeking based on my review of the current, relevant case law.

32. We conferred with Mr. Gabrielle and attempted to resolve our claim for fees. As of this moment, AutoNation has only offered $80,000 in fees and insists that any payment of fees be subject to confidentiality.

33. Representative matters:

- *Mainsail Parent, LLC, et al v. Jewell, et al*, Case No. 1:24-cv-22875-CMA (SDFL 2024). Defendant's litigation counsel in $20+ million non-compete and trade secret case involving the healthcare insurance denials that resolved after TRO and preliminary injunction proceedings (*see*, D.E. 60) and extensive fact and expert discovery.

- *Dohmen, et al v. Short's Travel Management, Inc.*, Case No. 1:23-cv-23057-RNS (SDFL 2023). Plaintiffs/Counter-Defendants' litigation counsel in case involving the collegiate sports charter jet industry. My clients sought declaratory judgments holding various competitive restrictions unenforceable and declaring certain information not a trade secret. Also defended defended various multi-million dollar non-compete and trade secret counterclaims. The matter was resolved on confidential terms.

- *Fume, LLC v. Real Distribution, LLC, et al, Case* No. 21-62104-CIV-DIMITROULEAS (SDFL 2021). Counsel for certain Defendants in a case arising out of the breakup of a $200 million vape company and partnership. Successfully defended against Plaintiffs' bid for a preliminary injunction. D.E. 110, D.E. 111.

- *Vital Pharmaceuticals, Inc. v. Alfieri, et al*, Case No. 20-cv-61307-AHS (SDFL 2020) Defendants' initial litigation counsel in a matter where Vital (the maker of Bang energy drink) sued another beverage company for hiring several former high-level employees. I

4

served as appellate counsel for defendant/appellant Amy Maros (Case No. 20-14217 (11th Cir. 2022)) who appealed grant of preliminary injunction. The 11th Circuit vacated the preliminary injunction as to Maros which prohibited solicitation of customers and use of Vital's alleged confidential information. *Vital Pharm., Inc. v. Alfieri*, 23 F.4th 1282 (11th Cir. 2022.)

- *Properties of the Villages, Inc. v. Kranz et al*, Case No. 5:19-cv-647-oc-30PRL (MDFL 2019) Defendants' litigation and trial counsel in a case seeking several million dollars based on various non-compete, trade secret, and unfair competition claims involving real estate transactions in The Villages.

- *Larweth v. Magellan. Health Inc.*, Case No. 6:18-cv-ORL-18-DCI (MDFL 2018). Plaintiff/Counter-Defendant's litigation and co-appellate counsel in action seeking declaratory judgment holding various competitive restrictions unenforceable and seeking damages for defamation while defending $12+ million non-compete counterclaim in case arising in pharmaceutical benefit management industry.

- *Sofia v. Platinum Strategies, LLC et al*, Case No. 01-16-0002-6358 (AAA 1016). Claimant's arbitration counsel in action that obtained $1 million and a declaratory judgment holding various competitive restrictions unenforceable on behalf of LLC member who was improperly ousted.

- *All Star Recruiting Locums, LLC, et al v. Ivy Staffing Solutions, LLC*, Case No. 21-62221-civ-Moreno/Strauss (SDFL 2021). Plaintiffs/Counter-Defendants' counsel in non-compete and trade secret case involving competition in the physician staffing industry that resolved after preliminary injunction proceedings and extensive fact discovery.

- *Szaloki v. Wal-Mart Stores, Inc.*, et al, Case No. 50-2106-CA007193-XXXX-MB-AG (Fla. 15th Jud. Cir. 2016). Plaintiff's counsel in a workplace sexual harassment and sexual assault case that involved punitive damages and resolved on the brink of trial. The case pitted Pollard PLLC against more than 12 lawyers from multiple law firms including Littler, Greenberg Traurig, Ford Harrison, and Shook Hardy.

- *Knights v. Wyndham Vacation Ownership, Inc.*, Case No. 6:23-cv-01104-RBD-DCI (MDFL 2023). Plaintiff's counsel in a workplace sexual harassment and sexual assault case that resolved midway through the litigation.

- *Larios v. Assa Abloy Entrance Systems US, Inc.*, Case No.:23-62382-civ-DIMITROULEAS (SDFL 2023). Plaintiff's counsel in a disability discrimination case that survived summary judgment (D.E. 37) and settled pre-trial.

- *Robinson v. Solomon*, Case No. 502023CA002381 (Fla. 15th Jud. Cir. 2023). Plaintiff's litigation and appellate counsel in a defamation per se action that successfully added punitive damages and is pending trial in Palm Beach Circuit Court. Defendant appealed the addition of punitive damages, but we prevailed. *Solomon v. Robinson*, Case No. 4d2024-1574 (Fla. 4th DCA 2024)

- *Federated National Holding Co. v. Prygelski*, Case No. CACE-17-004342 (Fla. 17th Jud. Cir. 2017). Defended the former CFO of a publicly traded company against non-compete and defeated plaintiff's bid for a temporary injunction while also acting as CFO's counsel in parallel arbitration proceedings. *Prygelski v. Federated National Holding Co.*, Case No. 01-17-0003-3831(AAA 2017).

- *Silva, et al, v. Nightingale Nurses, LLC et al*, Case No. 502015CA003070XXXXMB (Fla. 15th Jud. Cir. 2015). Counsel for a medical staffing company and related stakeholders in multi-front, multi-million-dollar litigation, including defense of state court contempt and injunction proceedings. As appellate counsel, successfully obtained stay of a contempt order and injunction. *Silva, et al v. Nightingale Nurses, LLC, et al*, Case No. 4D17-0032 (Fla. 4th DCA 2017). Also prosecuted federal Lanham Act (false advertising) claims, prosecution of shareholder fiduciary duty claims. *ESP Systems, LLC v. Nightingale Nurses, LLC*, Case No. 16-cv-81263-ZLOCH (SDFL 2016).

- *Moon et al v. Medical Technology Associates, Inc.*, Case No.: 8:13-cv-02782-EAK-EAJ (MDFL 2013). Represented a family-owned medical gas business in pursuit of a declaratory judgment holding various competitive restrictions unenforceable and defended against various non-compete counterclaims. I appealed the initial grant of a sweeping preliminary injunction to the 11th Circuit Circuit and won. *Moon v. Med. Tech. Associates, Inc.*, 577 Fed. Appx. 934, 935 (11th Cir. 2014). Following remand, I successfully defeated a renewed bid for summary judgment (D.E. 129) and won partial summary judgement (D.E. 128). The case was resolved on confidential terms on the brink of trial.

- *Jennings v. J.W. Cheatham, LLC*, Case No. 9:23-cv-80995-RLR (SDFL 2023). Counsel for concrete finisher in action against his former employer for violations of 42 USC § 1981. Following the grant of summary judgment in favor of his employer, we appealed. *Jennings v. J.W. Cheatham, LLC*, Case No. 24-12443-DD (11th Cir. 2024). The appeal is pending.

- *Kelley v. Allegiant Air, LLC*, Case No. 8:23-cv-00061-WJF/SPF (MDFL 2023). Counsel for airline gate attendant in an action against her former employer for violations of 42 USC § 1981. Following the grant of summary judgment in favor of her employer, we appealed. *Kelley v. Allegiant Air, LLC*, Case No. 24-13815 (11th Cir. 2024). The appeal is pending.

- *Laughlin v. Miami-Dade County, Florida*, Case No. 1:23-cv-23350-KMM (SDFL 2023). Counsel for a former animal services employee in action against her former employer, the county, for disability discrimination. Following the grant of summary judgment in favor of her employer, we appealed. *Laughlin v. Miami-Dade County, Florida*, Case No. 24-13284 (11th Cir. 2024). The appeal is pending.

Under 28 U.S.C. § 1746, I verify under the penalty of perjury that the foregoing is true and correct.

Date: March 7, 2025

Signature: *Jonathan Pollard*

Jonathan E. Pollard