UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-61772-RS

JUAN NAVARRO,

      Plaintiff,

v.

HOLLYWOOD IMPORTS LIMITED, INC.
and AUTONATION, INC.,

      Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

**THIS MATTER** is before the Court on Plaintiff Juan Navarro's ("Plaintiff") Verified Amended Motion for Attorneys' Fees and Award of Costs. [ECF No. 97]. Defendants Hollywood Imports Limited, Inc. and AutoNation, Inc. ("Defendants") filed a Response, challenging Plaintiff's Motion. [ECF No. 98]. Plaintiff then filed his Reply. [ECF No. 100]. The Honorable Rodney Smith referred this matter to the undersigned. [ECF No. 30]. After considering the filings, record, and applicable law, it is **ORDERED** that Plaintiff's Verified Amended Motion for an Award of Attorneys' Fees and Costs ("Motion") [ECF No. 97] be **GRANTED IN PART AND DENIED IN PART**.[1]

_____

[1] "Under 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Rules of Civil Procedure, [a Magistrate Judge has] the authority to enter a final order on [a] Motion for Attorneys' Fees and Costs because it is not case-dispositive." *CityPlace Retail, L.L.C. v. Wells Fargo Bank, N.A.*, No. 18-81689, 2021 WL 3361172, at *1 n.1 (S.D. Fla. Jan. 12, 2021) (citing *Collar v. Abalux, Inc.*, No. 16-20872, 2018 WL 3328682, at *13–14 (S.D. Fla. July 5, 2018)).

## I.     <u>BACKGROUND</u>

Plaintiff previously worked as a car salesman for AutoNation. *See generally* [ECF No. 97]. Plaintiff alleges that he was sexually harassed and assaulted by his supervisor during his employment. [*Id.*]. He filed this action against AutoNation alleging six causes of action: negligent supervision and negligent retention under Florida common law (Counts I and II); constructive discharge and hostile work environment under Title VII of the Civil Rights Act of 1964 (Counts III and IV); and constructive discharge and hostile work environment under the Florida Civil Rights Act (Counts V and VI). *See* [ECF No. 1 ¶¶ 31–82]. On August 12, 2024, approximately a year after the case was filed, Defendants moved for summary judgment on all claims. *See generally* [ECF No. 58]. The Court granted summary judgment in part and dismissed Plaintiff's Count III and V constructive discharge claims, but allowed Counts I, II, IV, and VI to proceed. [ECF No. 79 at 8–9].

Following the Court's ruling, the Parties reached a settlement agreement and filed a Joint Stipulation for Dismissal with Prejudice of the action. [ECF Nos. 83, 88]. Plaintiff then filed his Verified Motion for Attorneys' Fees. [ECF No. 97]. It is undisputed that the settlement agreement preserved Plaintiff's right to seek reasonable attorney's fees. The present dispute concerns the reasonableness of the fees requested.

Plaintiff is seeking $259,591.50 in attorney's fees, representing a total of 444.81 hours incurred by Attorneys Jonathan Pollard, Christopher Prater, Deakan Shuler, Michael Boehringer, and Paralegal Beatriz Reyes. [ECF No. 97 at 5–10].

Defendants lodge several objections to Plaintiff's Motion. *See generally* [ECF No. 98]. Defendants argue that Plaintiff's Motion is not properly verified and that time entries suffer from various billing deficiencies. [ECF No. 98 at 6–11]. They further argue the fee application lacks

proper evidentiary support for the hourly rates sought, and that any fee award should be significantly reduced in light of Plaintiff's fractional settlement recovery. [*Id.* at 13–20].

## II.    LEGAL STANDARD

In determining attorneys' fees, courts look at the reasonableness of (1) the hourly rate and (2) the number of hours expended. Under the "lodestar" method, a reasonable attorney's fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1994)). Under certain circumstances, the lodestar may be adjusted to reach a more appropriate fee award. *See Blum*, 465 U.S. at 888.

(a) Reasonable Hourly Rate.

A reasonable hourly rate is measured by "prevailing market rates in the relevant community." *Id.* at 895. In determining this, the Court should consider the rate "for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum*, 465 U.S. at 895–96 n.11).

To determine reasonable hourly rates, a court may consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). "In the end, however, the Court remains an expert on the issue of attorneys' fees and may consider its own knowledge and experience concerning reasonable and proper fees." *Warren Tech., Inc. v. UL LLC*, No. 18-21019-CV, 2020 WL 9219127, at *7 (S.D. Fla. Dec. 17, 2020), *report and recommendation*

*adopted in part*, No. 1:18-CV-21019-UU/LMR, 2021 WL 911238 (S.D. Fla. Mar. 10, 2021), *aff'd*, No. 21-11168, 2021 WL 4940833 (11th Cir. Oct. 22, 2021) (quoting *Norman*, 836 F.2d at 1303) (internal citations and quotations omitted). As such, "trial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838.

      (b) <u>Reasonable Number of Hours Expended.</u>

      The Court must also evaluate Plaintiff's requested fees for reasonableness in terms of the total hours expended by counsel and the paralegals. *See Norman*, 836 F.2d at 1303. The burden rests on the plaintiff to submit a request for fees that will enable the court to determine what time was reasonably expended. *See Loranger v. Stierheim*, 10 F.3d 776, 782 (11th Cir. 1994). "Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Wales-Walden v. Ak "N" Eli, LLC*, No. 17-20658-CIV, 2018 WL 6812692, at *3 (S.D. Fla. Oct. 12, 2018), *report and recommendation adopted sub nom*. *Wales-Walden v. Ak N Eli, LLC*, No. 1:17-CV-20658-UU, 2018 WL 6807316 (S.D. Fla. Oct. 29, 2018) (quoting *Nat'l Ass'n. of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).

      When ascertaining the number of reasonable hours, a court must deduct "excessive, redundant or otherwise unnecessary hours" from those claimed. *See Norman*, 836 F.2d at 1303. The Court can either evaluate counsel's time records by applying an hour-by-hour analysis or can make an across-the-board cut. *See Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428.

### III.   DISCUSSION

A.  Reasonable Hourly Rate

     i.   Rates for Attorneys Pollard, Prater, and Boehringer

Plaintiff requests an hourly rate of $800.00 for Attorney Jonathan Pollard, who billed 56.5 hours in this matter. [ECF No. 97 at 7]. Mr. Pollard has sixteen years of experience, has served as lead counsel in a jury trial, a bench trial and a final AAA arbitration, and prevailed in multiple appeals before the Eleventh Circuit and Florida District Courts of Appeal. [*Id.*].

Attorney Christopher Prater billed 255.3 hours in this matter and requests an hourly rate of $600.00. [*Id.* at 8]. Mr. Prater has practiced law since 2013 and has been with Pollard PLLC for over nine years. [*Id.*]. He has served as counsel in nearly 100 litigation and appellate matters and was responsible for managing discovery, taking all depositions, and handling day-to-day administration of this case. [*Id.*].

Attorney Michael Boehringer seeks a rate of $400.00 per hour for 17.9 hours of work. [*Id.* at 9]. Mr. Boehringer has been licensed to practice law since 2019 and worked at Pollard PLLC for over four and a half years. [*Id.*]. Mr. Boehringer regularly leads day-to-day litigation efforts in other employment matters and collaborates with senior opposing counsel. [*Id.*].

The undersigned finds that the hourly rates requested—$800.00 for Mr. Pollard, $600.00 for Mr. Prater, and $400.00 for Mr. Boehringer—are reasonable. Other experienced attorneys have been awarded more significant fees in this district.[2] *See e.g.*, *Family First Life, LLC v. Rutstein*,

---

[2] Defendants argue that Attorney Pollard's fee should be reduced because his previous employment litigation experience did not include Title VII cases. *See* [ECF No. 98 at 14.]. Defendants cite to *Flores v. Mulligans Vero Acquisition LLC* to support the contention that reasonable attorney rates for such cases are within the $400 per hour range. No. 23-cv-14225, 2024 WL 3432129, at *1 (S.D. Fla. Feb. 12, 2024); *see also* [ECF No. 98 at 15]. The Court notes, however, that *Flores* also does not involve a Title VII case, and instead was based on an FLSA minimum wage claim. Further,

No. 22-CV-80243-AMC, 2023 WL 5939620, at *3 (S.D. Fla. Aug. 23, 2023), *report and recommendation adopted*, No. 22-80243-CIV, 2023 WL 5929434 (S.D. Fla. Sept. 12, 2023) (holding that a fee of $775 is reasonable); *Soc. Life Network, Inc. v. Peak One Opportunity Fund, L.P.*, No. 21-21373-CV, 2023 WL 5053985, at *7 (S.D. Fla. July 20, 2023), *report and recommendation adopted*, No. 21-CV-21373, 2023 WL 5036606 (S.D. Fla. Aug. 8, 2023) (holding that fees of $700 for a partner and $500 for a senior associate are reasonable); *CITGO Petroleum Corp.*, 2022 WL 17718802, at *4–5 (holding that fees of $850 for a partner and $700 for an associate are reasonable); *Caracol TV, S.A. v. Telemundo TV Studios, LLC*, No. 18-23443-CIV, 2022 WL 17583608 (S.D. Fla. Aug. 4, 2022) (recommending attorneys from Greenberg Traurig be awarded between $765 for work by a partner and $415 for an associate); *Global Digit. Solutions, Inc. v. Bolzan*, No. 18-80106-CV, 2021 WL 7630524 (S.D. Fla. Aug. 13, 2021) (reducing requested rates for attorneys from Boies Schiller Flexner LLP from $1,230, $990, $850, and $630, to $820, $660, $567, and $420, respectively).

     ii.   <u>Rate for Attorney Shuler</u>

Attorney Deaken Shuler requests fees at an hourly rate of $500.00 for 105.1 hours billed. [ECF No. 97 at 8]. Mr. Shuler was admitted to the Missouri Bar in 2023 and has served as lead counsel in three complex employment disputes in federal court. [ECF No. 97-4 ¶¶ 7–9]. Mr. Shuler passed the Florida bar exam in 2015 but was never admitted to practice in this jurisdiction. [*Id.* ¶ 2]. Mr. Shuler's time accounts for 105.1 of the total 444.81 hours claimed by Plaintiff, and $52,550.00 of the total $259,591.50 in fees sought. [ECF No. 98 at 17].

---

as discussed below, this Court has approved rates like those requested by Mr. Pollard and for attorneys with experience like Mr. Pollard.

The undersigned finds that the hourly rate of $500 requested for Mr. Shuler is unreasonable for several reasons. Plaintiff requests that the Court treats Mr. Shuler as a ten-year practicing attorney for rate purposes. [ECF No. 97 at 9]. However, Mr. Shuler is *not* admitted to practice law in the state of Florida and did *not* seek admission to practice *pro hac vice*. [ECF No. 98 at 17].  As previously ruled by this Court, "[t]his district's Special Rule 4(a) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, provides that only members of the bar of this Court may appear as attorneys before the Court, unless they are admitted *pro hac vice*." *Ramones v. AR Res.*, *Inc.*, No. 19-62949-CIV, 2022 WL 1443062, at *3 (S.D. Fla. May 6, 2022) (reducing fee of attorney not admitted to practice in district from $435 to $200). In evaluating a reduced fee for a non-admitted attorney, the Court should determine the prevailing market rates for non-admitted attorneys based on those attorneys' training, skill, and experience. *See id.* (citing *Callaway v. Acting Comm'r of Soc. Sec.*, 802 F. App'x 533, 537 (11th Cir. 2020)); *see also Bluestarexpo, Inc. v. Enis*, No. 21-20875-CIV, 2022 WL 17583630, at *4–5 (S.D. Fla. Nov. 23, 2022), *report and recommendation adopted*, No. 21-20875-CIV, 2023 WL 158292 (S.D. Fla. Jan. 11, 2023) (reducing rate for period of time attorney was not barred in Florida and did not move to appear *pro hac vice* from $250 to $150); *Venus Concept USA Inc. v. Smith High Inc.*, No. 1:21-CV-21558-KMM, 2022 WL 7609495, at *4 (S.D. Fla. Sept. 28, 2022), *report and recommendation adopted*, No. 1:21-CV-21558-KMM, 2022 WL 7514591 (S.D. Fla. Oct. 13, 2022) (reducing rate of attorney not admitted in Florida but with three years' experience and admission in two other jurisdictions from $360 to $150).

Here, Mr. Shuler first became a licensed attorney in 2023, admitted to the bar in Missouri. [ECF No. 97-4 ¶ 7]. He passed the Florida bar exam in 2015 but has not been admitted to practice in Florida. Though he has only officially been a licensed attorney for two years, Mr. Shuler has

worked for Pollard PLLC since 2016 and was the Firm's Director of Legal Operations since 2019. [*Id.* ¶ 3–4]. Nevertheless, because Mr. Shuler is not admitted to practice in this jurisdiction, has only been officially practicing as a lawyer for two years, and did not move to appear in this case *pro hac vice*, the Court should not set his rate akin to that of a 10-year practicing attorney. *See Ramones*, 2022 WL 1443062, at *3 (non-admitted attorney with sixteen years' experience and admission to five other jurisdictions rate reduced from $435 to $200). Considering Mr. Shuler's skill, but failure to seek admission *pro hac vice*, the Court will reduce Mr. Shuler's hourly rate to $200. *See id.*; *Bluestarexpo, Inc.*, 2022 WL 17583630, at *4–5; *Venus Concept USA Inc.*, 2022 WL 7609495, at *4.

### iii.   Rate for Paralegal Reyes

Plaintiff seeks an hourly rate of $150.00 for Beatriz Reyes, a Florida registered Paralegal, who billed 10.01 hours in this matter. [ECF No. 97 at 9]. Ms. Reyes has over twelve years of experience in employment litigation, including experience with plaintiff-side and class action matters. [*Id.*].

The undersigned finds that the hourly rate requested for Ms. Reyes is reasonable. "[H]ourly rates between $100 to $150 [are] reasonable for paralegals, with an hourly rate of $150 reserved as the highest amount for paralegals with considerable experience." *Caldwell v. Seychelles Ltd., LLC*, No. 0:23-CV-61267, 2024 WL 4202125, at *3 (S.D. Fla. Aug. 16, 2024) (collecting cases).

### iv.   Reduction of hours for Michael Boehringer and Reyes for absence of specific declaration.

The undersigned also declines to reduce the hourly rates for Attorney Michael Boehringer and Paralegal Reyes based on the absence of individual declarations regarding their qualifications and time expended. *See* [ECF No. 98 at 11–12]. Local Rule 7.3 merely requires the Motion itself, and the information inside the Motion, to be verified and does not specifically require that each

timekeeper submit individual declarations of verification. *See* S.D. Fla. L.R. 7.3(a) ("The motion shall . . . be verified[.]"). Plaintiff's Motion, containing the qualifications for Attorney Boehringer and Paralegal Reyes, is verified. *See* [ECF No. 97 at 12]. Defendants also fail to provide any supporting caselaw. [*Id.*].

    B.  The Number of Hours Expended.

Here, Plaintiff seeks $259,591.50 in attorneys' fees for 444.81 hours of work expended. [ECF No. 97 at 5]. The Court must evaluate whether the total hours expended by counsel is reasonable. *See Norman*, 836 F.2d at 1303. When ascertaining the number of reasonable hours, a court must deduct "excessive, redundant or otherwise unnecessary hours" from those claimed. *Id.* "The fee applicant also bears the burden of providing specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the action." *Christopher v. Residential Realty Services Corp.*, No. 19-CV-61240, 2022 WL 625347, at *4 (S.D. Fla. Feb. 15, 2022), *report and recommendation adopted sub nom. MELVIS CHRISTOPHER, et al., Plaintiffs, v. RESIDENTIAL REALTY SERVICES CORP., Defendant.*, No. 19-61240-CIV, 2022 WL 625044 (S.D. Fla. Mar. 3, 2022).

The Court finds the number of hours expended to be excessive in light of the procedural history and outcome of the case, which ultimately resolved by settlement and where the docket, leading to Plaintiff's Motion, only spanned 97 entries. Moreover, after reviewing Plaintiff's forty-two-page fee invoice, the Court noted billing deficiencies which required a recalculation of the requested fees.

The Eleventh Circuit has previously stated that "when the number of hours involved is very high, the Court can conclude that an hour-by-hour analysis is impractical." *Katz*, 127 F. Supp. 3d at 1305. Thus, when the billing record is extensive, like here, the district court is not required to

conduct an hour-by-hour analysis. Instead, it may apply an overall across-the-board reduction to the total hours spent on litigation. *See id.*; *Loranger*, 10 F.3d at 783; *Bivins*, 548 F.3d at 1350. However, when doing so the "the court 'must do more than eyeball the request and if it seems excessive[,] cut it down by an arbitrary percentage. It is obligated to articulate the decisions it made, give principled reasons for those decisions, and show its calculation.'" *Otto v. City of Boca Raton, Fla.*, No. 24-10478, 2025 WL 2952783, at *4 (11th Cir. Oct. 20, 2025) (citing *Johnston v. Borders*, 36 F.4th 1254, 1287 (11th Cir. 2022)).

Here, the analysis is complicated by the Court's reduction in Mr. Shuler's hourly rate, from $500 to $200, as well as attorneys billing at different rates. *See supra*, § III(A)(ii). Therefore, the Court will first identify the number of hours suffering from non-compensable deficiencies and analyze Defendant's objections to Plaintiff's fee application, then reduce the total fee award requested accordingly. Considering Mr. Shuler's hourly rate reduction, the Court's calculation of Plaintiff's overall requested fees will begin at $228,061.50.[3]

         i.    <u>Hours for excluded expert.</u>

First, Defendants argue that the hours related to Plaintiff's excluded expert witness should be reduced. The Court disagrees. The hours billed for Plaintiff's expert witness, Michael L. Elkins, are compensable because they reflect necessary work done before the expert was excluded. *See Five for Entm't, S.A. v. Ayala Rodriguez*, No. 11-24142-CV, 2017 WL 511085, at *13 (S.D. Fla. Feb. 2, 2017), *report and recommendation adopted in part, rejected in part sub nom. Five for Entm't S.A. v. Rodriguez*, No. 11-24142-CIV, 2017 WL 5248488 (S.D. Fla. Mar. 31, 2017), *aff'd sub nom. Five for Entm't S.A. v. El Cartel Records, Inc.*, 725 F. App'x 793 (11th Cir. 2018)

---

[3] 105.1 (hours billed by Mr. Shuler) x $200 (Mr. Shuler's reduced rate) + Other Timekeepers = $228,061.50 (revised total amount).

("Moreover, it was not relevant that [the expert] did not ultimately testify at trial or that their reports were allegedly flawed, because their depositions were considered reasonably necessary at the time they were taken.") (rejected in part on different grounds).

Although Defendants argue that Mr. Elkin's testimony was excluded and therefore unnecessary, [ECF No. 98 at 9], Plaintiff is seeking fees incurred for consultation with and the deposition of Mr. Elkins when they were still "necessary at the time[.]" *See Five for Entm't, S.A. v. Ayala Rodriguez*, 2017 WL 511085, at *13; *see also* [ECF No. 97-3 at 19–27]. Defendants cite to *Jarema v. United States* to argue that fees associated with hours expended on an excluded expert should not be awarded. No. 8:19-cv-197-T-24CPT, 2021 WL 3511114, at *5 (M.D. Fla. Jun. 7, 2021). However, the court's ruling in *Jarema* was not intended to set a precedent but was based on a previous order that explicitly stated that fees would not be granted for the expert in that situation. *See id.* The case does not require that fees for an excluded expert *must* be reduced. *See id.*

Defendants also cite to *Cornell Univ. v. Hewlett Packard Co.* for the same argument. No. 01-CV-1974, 2009 WL 1405208, at *3 (N.D.N.Y. May 15, 2009). However, *Cornell Univ.* is a factually dissimilar, out-of-circuit, patent case. Namely, the expert's fee in *Cornell Univ.* was reduced because the expert continued to use a damages theory that was previously explicitly excluded by the court. 2009 WL 1405208, at *3 ("Dr. Steward continued to assert a damage theory in direct conflict with the court's instructions."). This did not happen here. Moreover, all the entries associated with Mr. Elkins were for consultation before he was excluded. [ECF No. 97-3 at 19-27]. Thus, the Court will not reduce the hours associated with Plaintiff's expert witness, just because he was ultimately excluded. *See Tampa Bay Water v. HDR Eng'g, Inc.*, No. 8:08-CV-2446-

11

T-27TBM, 2012 WL 5387830, at *9 (M.D. Fla. Nov. 2, 2012) (awarding fee for ultimately excluded experts who attorneys consulted with as part of case investigation and preparation).

ii.   Reduction in hours for bankruptcy case

The Court agrees with Defendants that the hours billed for Plaintiff's separate bankruptcy case are not compensable here. *See Leblanc v. USG7, LLC*, No. 612CV1235ORL41TBS, 2016 WL 1358529, at *2 (M.D. Fla. Apr. 6, 2016). "Redundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended." *Id.* (quoting *Perez v. Carey Int'l, Inc.*, 373 F. App'x 907, 910–11 (11th Cir. 2010)).   In *Leblanc*, the court declined to award fees incurred "as a result of the need to draft, file, and serve the Second Amended Complaint or the Renewed Motion for Final Default Judgment[,]" as they were a result of  "Plaintiffs' counsels' need to correct their mistakes and are, therefore, both excessive and redundant." *Id.* (citing *Mobley v. Apfel*, 104 F. Supp. 2d 1357, 1360 (M.D. Fla. 2000)).

Here, Plaintiff requests to recover 11.45 hours billed for a separate "personal bankruptcy case [Plaintiff] filed and later withdrew." [ECF No. 98 at 10]. Plaintiff, while employing bankruptcy counsel, submitted a Chapter 7 Voluntary Petition to United States Bankruptcy Court for the Southern District of Florida five weeks before he commenced the instant lawsuit. [*Id.*]. However, Plaintiff failed to inform his attorneys here of his intention to file for Chapter 7. [*Id.*]. Therefore, counsel was forced to expend time to consult with the bankruptcy attorneys and eventually withdraw the bankruptcy filing. [*Id.*] Plaintiff's self-admitted failure to properly inform his counsel caused the fees he now seeks to recoup. [*Id.* at 11]. As such, these fees are redundant and unnecessary. *See Leblanc*, 2016 WL 1358529, at *2. The 11.45 hours associated with Plaintiff's bankruptcy case as non-compensable.

iii.   Clerical and Administrative Work.

A portion of Plaintiff's hours are non-compensable as they reflect clerical and administrative work.[4] *See Allen v. Robert F. DeLuca, M.D., P.A.*, No. 9:18-CV-81265, 2019 WL 12265795, at *3 (S.D. Fla. Oct. 29, 2019), *report and recommendation adopted,* No. 18-81265-CIV, 2020 WL 9458729 (S.D. Fla. Jan. 2, 2020). "A court may award fees for the work of paralegals, but only to the extent that [they] perform work traditionally done by an attorney." *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) (internal citation and quotation marks omitted).

For example, Ms. Reyes, a Florida Registered Paralegal, billed several hours for, *inter alia*, reviewing and downloading Plaintiff's documents, contacting the EEOC regarding case access and status, communicating with the client regarding mediation availability, and reviewing and organizing documents served by opposing counsel. *See generally* [ECF No. 97-3]. These are examples of non-compensable clerical tasks that will be adjusted accordingly. *See Allen*, 2019 WL 12265795, at *3.

Plaintiff's attorneys run afoul of this principle as well. *See e.g.*, [ECF No. 97-3 at 11 (billing 1.60 hours to "[r]eview[ing] the materials collect from the client . . . [o]rganiz[ing] and bates the documents and serve on opposing counsel.")]; *see also* [*id.* at 32 (billing a total of 1.7 hours over four days to "reviewing" documents)]; [*id.* at 11 (billing 0.2 hours

---

[4] The hours identified as non-compensable clerical work may be inflated due to Plaintiff's widespread usage of block billing. *See e.g.* [ECF No. 97-3 at 13 (billing 0.2 hours to "[e]mail draft Verizon subpoena to opposing counsel and, once no objection was confirmed, instruct [paralegal] about getting it out for service.")]. The foregoing billing entry combines legal tasks (communications with opposing counsel) with non-compensable tasks (instructional communications to support staff), without identifying the hours billed to each discrete task. While discussed more below, this is a good representation of why block billing is disfavored as it makes "it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to particular task." *Barnes*, 168 F.3d at 429.

to "[r]e-send" production folder to defendants to "correct technical issues" with accessing folder)]; [*id.* at 2 (billing total of 0.8 hours over two days to corresponding with the EEOC)].

The undersigned also notes that various attorneys bill time for simply reviewing docket entries, for no stated reason, and bill 0.1 hours for each docket entry reviewed. *See e.g.*, [*id.* at 3 (Attorney Prater billing 0.6 hours to review various initial docket entries, such as judge assignments, and billing 0.1 hour for each entry)]; [*id.* at 4 (billing 0.1 hour to review paperless, three sentence, clerk's notice on docket)]. This Court has previously disapproved of such practice. *See Fees v. Zarco*, No. 17-20564-CIV, 2017 WL 8784447, at *2 (S.D. Fla. Dec. 19, 2017) ("Counsel routinely charged 0.1 hour for simply reviewing docket entries—no matter how short the document. Where the cumulative total time Counsel spent reviewing the docket entries amounted to less than six (6) minutes, Counsel should not have billed 0.1 hour per entry regardless of the number of docket entries Counsel reviewed. This practice is not appropriate."); *Solorzano v. M.I. Quality Lawn Maint., Inc.*, No. 10-20975-CIV, 2013 WL 12244414, at *5 (S.D. Fla. Dec. 16, 2013) ("The undersigned also finds the 3.5 hours [counsel] spent reviewing docket entries for accuracy unreasonable and unnecessary.").

These hours, and hours like these, will be reduced. *See Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them.") (citing *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999)); *see also Richardson v. Fla. Drawbridges Inc.*, No. 21-cv-80803-MATTHEWMAN, 2023 WL 2251397, at *10 (S.D. Fla. Feb. 27, 2023) ("Time entries for clerical or administrative tasks should be excluded.").

Plaintiff's attorneys also bill an excessive amount of time for intraoffice communications. For example, Attorney Prater billed nearly half an hour on January 2, 2024, to email paralegal Reyes "about getting information from the client and about discovery served by Defendants." *See* [ECF No. 97-3 at 8]. Such communications are rampant throughout the invoice, adding up to large amounts essentially billed for emails and talks between Plaintiff's attorneys and support staff. *See* [*id.* (nearly half an hour billed to emailing Ms. Reyes and Mr. Shuler about mediation dates and potential witnesses to depose)]; *see also* [*id.* at 9 (0.6 billed to conference with Ms. Reyes regarding "working with the client to answer open questions we have for the client[.]")]; [*id.* at 10 (0.5 total billed to emailing Ms. Reyes "descriptions of documents" needed from client and instructing her on "how to collect the client's social media accounts.")].

While intraoffice communications are not *per se* unreasonable and may be billable to paying clients, the calculus changes when fees are shifted to an adversary. *See Cap. Inventory, Inc. v. Green*, No. 1:20-CV-3224-SEG, 2024 WL 1480484, at *8 (N.D. Ga. Feb. 20, 2024) (citing *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1269 n.11 (S.D. Ala. 2013); *Novak v. Safeco Ins. Co. of Ill.*, No. 6:15-cv-215-Orl-41DCI, 2016 WL 8849018, at *11 (M.D. Fla. Nov. 18, 2016), *report and recommendation adopted*, 2017 WL 1552091 (May 1, 2017)). Indeed, this Court has previously reduced fees based on internal communications within a firm "as this is the inherent risk of retaining multiple attorneys . . . [and a] client's choice to employ a firm with multiple attorneys should not be paid for by the party to whom the fees are shifted." *See Mama Jo's Inc. v. Sparta Ins. Co.*, No. 1:17-CV-23362-KMM, 2023 WL 5352766, at *10 (S.D. Fla. July 17, 2023), *report and recommendation adopted*, No. 1:17-CV-23362-KMM, 2023 WL 5350827 (S.D. Fla. Aug. 21, 2023); *see also Eaton v. Principal Life Ins. Co.*, No. 8:20-CV-61-KKM-JSS, 2023 WL 5804263, at *5 (M.D. Fla. Aug. 7, 2023) (applying across-the-board reduction for "communications between

Defendants' counsel and their support staff[,]" duplicative correspondences, and internal phone calls); *Lee*, 918 F. Supp. 2d at 1271–74 (applying across-the-board reduction for, *inter alia*, "unnecessary billings for intraoffice communications").

While not every internal communication is automatically considered non-compensable, *see Ponce v. BCA Fin. Servs., Inc.*, No. 10-CIV-20337, 2012 WL 13008156, at *6 (S.D. Fla. Sept. 20, 2012), excessive, vague, or unnecessary communications and conferrals will not be awarded, *see Lee*, 918, F. Supp. 2d at 1270 ("With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings.").

Here, almost every page contains time billed for intraoffice communications, some between attorneys discussing case issues, others between attorneys and support staff giving instructions. Indeed, on certain pages, almost every other entry contains some sort of conferral among attorneys or support staff. *See e.g.*, [ECF No. 97-3 at 16]. While some conferrals are necessary, such as hearing debriefs and strategy sessions, others are included sporadically throughout the invoice in vague entries where it is unclear what is being conferred about or why such conferral was necessary. *See* [*id.* at 15 (billing 0.8 hours in-part to reviewing a declaration and conferring with attorney about it)]. Many of the identified communications are also embedded in block billed entries (discussed below). Therefore, it is difficult if not impossible to separate out every instance of intraoffice communication that may not be compensable. The Court will focus on reducing hours billed for instructive communications between attorneys and support staff, and excessive conferrals between attorneys. *See Barthco Int'l, Inc. v. DIJFO do Brasil, Ltda.*, No. 12-21221-CIV, 2014 WL 12861825, at *4 (S.D. Fla. May 20, 2014), *report and recommendation adopted*, No. 12-21221-CIV, 2014 WL 12861826 (S.D. Fla. Oct. 24, 2014) ("This Court was

conservative in reducing the hours requested, however, the undersigned deducted for excessive strategizing, conferral, and duplication between three attorneys at the firm—two partners and one associate."); *Eaton*, 2023 WL 5804263, at *5. Remaining intraoffice conferrals included in block billed entries are considered in § III(B)(iv).

Taking a conservative approach, the undersigned identified a total of 21.04 non-compensable hours that are clerical/administrative work or improper intraoffice communications.

  iv. <u>Block Billing.</u>

The Court also finds that a reduction is warranted due to Plaintiff's use of block billing. *See Ferrara Candy Co. v. Exhale Vapor LLC*, No. 217CV512FTM38MRM, 2019 WL 317646, at *3 (M.D. Fla. Jan. 7, 2019), *report and recommendation adopted,* No. 217CV512FTM38MRM, 2019 WL 313790 (M.D. Fla. Jan. 24, 2019) ("The Eleventh Circuit has approved across-the-board reductions to fee requests where billing entries are block billed.") (collecting cases). Block billing is disfavored as it makes "it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task." *Barnes*, 168 F.3d at 429. "Moreover, when tasks lumped together are related, properly delineating among them is even more important to avoid charging for redundant or unnecessary hours." *Anderson v. Surgery Ctr. of Cullman, Inc.*, No. 2:12-CV-00598-AKK, 2018 WL 8807149, at *12 (N.D. Ala. Aug. 27, 2018), *aff'd* 839 F. App'x 364 (11th Cir. 2020).

Here, Plaintiff's invoice contains a multitude of block billed entries, listing multiple tasks in a singular entry.  *See generally* [ECF No. 97-3]. *see also Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012) (defining block billing as listing "all the day's tasks on a case in a single entry, without separately identifying the time spent on each task."). Indeed, almost every single page of the invoice contains at least one block

billed entry. *See generally* [ECF No. 97-3]. Some entries combine legal work with non-compensable work (e.g. clerical work, administrative work, and intraoffice communications) or vague tasks.

Defendants point to several block-billed entries in their Response. *See* [ECF No. 98-5 at 1–2].[5] For example, an entry from October 30, 2023, bills 3.8 hours for multiple tasks including drafting an order of proof, completing an outline with evidentiary citations, identifying case issues, and conferring with co-counsel. [ECF No. 97-3 at 6]. While some of these tasks are compensable (i.e. drafting, outlining, identifying case issues), others such as the generalized intraoffice communications are not. *See Mama Jo's Inc.*, 2023 WL 5352766, at *10. Yet, because Plaintiff has lumped all the tasks together, the Court is unable to separate out the non-compensable tasks. *See Anderson*, 2018 WL 8807149, at *14.

The Court's review of the invoice shows many more examples of improper block billing. Such entries mix legally compensable tasks with clerical or administrative tasks, *see e.g.*, [ECF No. 97-3 at 4 (mingling compensable tasks such as drafting documents with clerical work of preparing emails and receiving and reviewing documents)]; [*id.* at 31 (billing 0.5 hours to drafting motion then filing and emailing motion with court)], excessive or vague communications among attorneys, *see e.g.*, [*id.* at 20 (billing 1.20 hours to analyzing draft and "discussing open issues" with other attorneys)]; [*id.* at 7 (billing 0.2 hours to revising documents and instructing another attorney how to file the documents)]; [*id.* at 23 (billing 0.4 hours to analyzing documents and then "emailing [attorneys] about them")], non-compensable communications with support staff, *see*

---

[5] Though entry numbers 189 and 370 are block billed, they all concern legally compensable tasks (including post-mediation debriefs). *See Otto*, 2025 WL 2952783, at *5 (allowing block billed entries where the tasks listed were closely related, reasonable, and necessary legal tasks). Further, while entry numbers 436 and 445 are improperly block-billed, they are reduced later in this Order for excessive time spent on summary judgment briefing.

*e.g.*, [*id.* at 9 (billing 3.10 hours to "[c]ontinue revising discovery and working with [paralegal] to get open questions to client.")], or are just generally vague, *see e.g.*, [*id.* at 22 (billing 0.7 hours to researching and then "sharing caselaw" with other attorney)]; [*id.* at 23 (billing 0.5 hours to "attention to expert report and confer with team including C. Prater regarding same.")]; [*id.* at 25 (billing 0.4 hours to "analyzing" documents and "appris[ing] team of same and impact on case.")].

Because the entries do not clearly define what amount of time was spent on each task, the Court "cannot determine the reasonableness of [the] submitted hours post-hoc without more specific information[.]" *Anderson*, 2018 WL 8807149, at *12. After reviewing the invoice, and again taking a conservative approach, the undersigned finds a total of 32 hours suffering improper block billing defects.

> v.    Excessive time spent on tasks

Plaintiff's billing record reveals several examples of unnecessary or excessive time billed on certain tasks. *See Residential Realty Services Corp*, 2022 WL 625347, at *4 (finding that counsel's fees should be reduced for, among other things, spending too much time on certain tasks).

Namely, Plaintiff's time billed for his response briefing to Defendants' motion for summary judgment, [ECF No. 70], is excessive. Plaintiff's invoice reflects an inordinate amount of time to prepare and file his eleven-page summary judgment response and fifteen-page response statement of facts. For example, counsel spent nearly six hours reviewing Defendant's summary judgment filing and the record, conferring with their team about the same, and researching their response. *See* [ECF No. 97-3 at 33]. While some of this is compensable (i.e. research), other parts are not (i.e. reviewing documents and vague intraoffice conferrals). Yet, due to block billing, the Court is unable to untangle the entry to understand the length spent on each portion. Other

excessive (and vague) entries include over nine hours to "[a]nalyze, annotate and review materials to be used in summary judgment opposition[.]" [*Id.* at 34]. Further, multiple attorneys expended time seemingly drafting the same summary judgment response and statement of facts. *See* [*id.* at 33–35 (Attorneys Prater, Shuler, Pollard, and Boehringer billing a combined fifty-five hours over four days to draft the eleven-page summary judgment response and fifteen-page response statement of facts)]. Ultimately, Plaintiff's attorneys spent over eighty (80) hours in the preparation and drafting of an eleven-page Response Motion for Summary Judgment and fifteen-page Response Statement of Material Facts. *See* [*id.* at 33–35]; *see also* [ECF Nos. 68, 70]. This is excessive.[6] *See Houston Specialty Ins. Co. v. Fontecilla*, No. 20-20725-CIV, 2023 WL 3570169 (S.D. Fla. Mar. 31, 2023), *report and recommendation adopted*, No. 20-20725-CIV, 2023 WL 3568162 (S.D. Fla. May 19, 2023) (finding 24.5 hours billed to ten-page summary judgment motion and seven-page statement of facts to be excessive). The Court will reduce the hours worked on Plaintiff's summary judgment response by sixty percent (forty-eight hours), to be included in the Court's across the board cuts. *See id.*

The invoice also contains other instances of excessive time billed to routine tasks. *See e.g.*, [ECF No. 97-3 at 41 (0.7 hours billed to reviewing single sentence paperless order "DE 24")].[7] Overall, the undersigned has identified a total of 48.7 hours excessively billed to tasks that will be considered in the across-the-board cuts.

      vi.   <u>Vague time entries</u>

---

[6] The Court also notes that Plaintiff's attorneys billed for the time they expended to correct their initial summary judgment filing, and to file a corrected response. *See* [ECF No. 97-3 at 35]. These hours are not compensable. *See Leblanc*, 2016 WL 1358529, at *2.

[7] The Court also notes inconsistencies in the time Plaintiff's counsel spent on certain tasks. For example, counsel spent 0.7 hours to review a single sentence paperless order on the docket [ECF No. 97-3 at 41], but purportedly spent only 0.4 hours to analyze around 1700 pages of discovery production, *see* [*id.* at 28].

Counsel's entries are also sometimes vague and lacking in detail as to their purpose. For example, Mr. Shuler spent 1.50 hours to "[w]ork with C. Prater to resolve open issues on discovery responses." [97-3 at 10]. It is not clear what working to resolve the open issues entailed (i.e. whether it involved research, written briefing, or conferral over objections etc.). Thus, the entry does not give the Court enough detail to evaluate if the task properly took 1.5 hours. Another example includes counsel billing 3.30 hours to "[c]reat[ing] production breakdown of Defendants' production." It is unclear what creating a "production breakdown" means or what a "production breakdown" even is in this context. The entry is too vague to allow the Court to evaluate whether it describes a genuine legal task, or perhaps a clerical/administrative task that should not be billed by the attorney. *See Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1295 (S.D. Fla. 2008), *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (declining to grant fees for time entries that lacked specificity); *see also Scelta v. Delicatessen Support Services, Inc.*, 203 F. Supp. 2d 1328, 1334 n. 2 (M.D. Fla. 2002) (stating that time entries that are vague or unclear are not compensable); *Houston Speciality Insurance Co.*, 2023 WL 3570169, at *8 (noting time entries "[r]esearch[ing] case law to assist with drafting MSJ" and "[c]ontinu[ing] [c]ase law research to assist with MSJ" to be insufficiently detailed and too vague to "determine whether the amount of time spent was reasonable or whether it was duplicative.").

The Court will not grant fees for vague and unclear entries. *See e.g.*, [ECF No. 97-3 at 1 (billing one hour to "[i]nitial [c]ase analysis.")]; [*id.* at 9 (billing two hours to "[d]raft/revise discovery responses.")]; [*id.* at 12 (billing 2.20 hours to "[b]egin analyzing the production by Defendants in connection with their discovery responses.")]; [*id.* at 20 (billing 0.3 hours to "[r]esearch[ing] expert discovery and disclosure issues.")]. In total, the undersigned identified 15.7 hours billed in vague and non-specific time entries.

vii.    Duplicative time entries

Further, the Court has identified several instances of duplicative billing entries. For example, Mr. Prater spent 0.50 hours to "[a]nalyze the amended answers and affirmative defenses filed by Defendants and confer with D. Shuler about the differences." [ECF No. 97-3 at 6]. Meanwhile, Mr. Shuler similarly billed 1.10 hours to "[a]nalyze differences between Defendants initial and amended answers, confer with C. Prater regarding findings." [*Id.*]. Other examples include attorneys double billing for case strategy conferences, conferrals, and/or debrief sessions [*id.* at 11, 13–14, 26–27, 29], and attorneys analyzing the same production of documents [*id.* at 28]. It also appears that at least once, counsel simply duplicated the same billing entry on the same day, for the same work, and same amount of time, but failed to fix the mistake. *See* [*id.* at 12 (duplicate entries billing 1.2 hours for "Prepare for and have conferral call with opposing counsel. Debrief call with J. Pollard.")].

These time entries essentially bill for the same work done (and are block billed). The time allocated for these tasks, and those like it, are duplicative and will be adjusted accordingly. *See Lane v. Cap. Acquisitions & Mgmt. Co.*, 554 F. Supp. 2d 1345, 1352 (S.D. Fla. 2008) ("[W]hen two or more attorneys are doing the same work without making a distinct contribution to the case the duplicative fees cannot be sought.") (*citing Barnes*, 168 F.3d at 432); *see also Norman*, 836 F.2d at 1302 ("There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer."). The undersigned found a total of 10.1 hours suffering from duplication.

viii.   Fractional Recovery Received by Navarro.

22

Finally, Defendants argue the Court should reduce Plaintiff's fee based on the fractional recovery received from the settlement compared to his initial claimed damages. [ECF No. 98 at 19–20]. Here, Plaintiff claimed compensatory damages of over $3,000,000.00 but received less than 5.9% of that, or roughly $174,946.80. *See* [*id.*]; *see also* [ECF No. 98-3 ¶ 14]. Attorney fee awards under § 1988 are evaluated in light of the Plaintiff's success. *See Hensley v. Eckerhart*, 461 U.S. 424, 438, n.14 (1983); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987). And while the overall amount recovered matters in determining the Plaintiff's success, it is not a *per se* rule that fees are excessive if they exceed the damages recovered. *Popham*, 820 F.3d at 1580. Therefore, the Court declines to reduce Plaintiff's fee recovery based on his purported fractional recovery.

ix.    Conclusion.[8]

The trial court "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Katz*, 127 F. Supp. 3d at 1301–02. As such, "trial courts may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Id.*

The Court's review of Plaintiff's invoice revealed a total of 138.99 hours suffering from improper billing defects. These include hours improperly attributed to Plaintiff's separate bankruptcy case, hours billed for administrative/clerical work, excessive intraoffice communications, improper block billed entries, excessive time spent on tasks, time billed for

---

[8] Defendants argue again that Plaintiff failed to comply with local Rule 7.3 by not specifically verifying the invoice. *See* [ECF No. 98 at 7]. However, again, Local Rule 7.3 merely requires the Motion itself, and the information inside the Motion, to be verified and does not specifically denote that the invoice must be also verified. *See* S.D. Fla. L.R. 7.3(a) ("The motion shall . . . be verified[.]").

duplicated work, vague time entries, and time billed to correct filings made by Plaintiff's attorneys. Therefore, the Court finds that a 31.2 % across-the-board reduction in hours is appropriate to account for these billing deficiencies.[9] Starting from the $228,061.05 requested by Plaintiff (including Mr. Shuler's rate reduction) and factoring in the Court's 31.2 % reduction due to billing defects, Plaintiff's counsel may recover $156,906.31 in attorneys' fees for work conducted in prosecuting this matter.[10]

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion for Award of Attorneys' Fees and Costs [ECF No. 97] be **GRANTED IN PART**. Defendant shall make its payment of **$156,906.31** in attorneys' fees to Plaintiff.

**DONE AND ORDERED** in Miami, Florida, this 2nd day of December 2025.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:     **All Counsel of Record**

---

[9] 138.99 (non-compensable hours) ÷ 444.81 (total hours claimed) = 31.2 %.

[10] $228,061.50 × 68.8 % = $156,906.31